# Samuel Olakunle Araoye, MBA, A+

Philadelphia, PA 19124 • afroxylin7@gmail.com • 267-428-9916

## Accounting / Audit Professional

A versatile professional with a stellar career, having proven track-record of meeting organizational goals and objectives via strategic performance of diverse accounting and audit functions. Demonstrated aptitude and positive work ethics with a wide array of transferable skills suitable for diverse focuses. Resounding success in identifying and remediating discrepancies to ensure compliance, as well as averting unwarranted costs. Exemplary leadership and communication skills in fast-paced environments. Current CPA candidate.

## Professional Experience

City of Philadelphia – Philadelphia, PA
**Accountant – Revenue Department (WRB – Water Revenue Bureau):** 3/2015 to Present

Began tenure as an Accountant-Trainee prior to taking on full-performance as an Accountant. Utilize in-depth knowledge in performing accounting duties with strict adherence to GAAP standards. Prepare and maintain bills, invoices, error-corrections, and adjust accounts as needed, in-line with City ordinance regarding water utility tariff, along with pertinent legal requirements, regulations, and administrative policies. Account adjustments translate into over $2M in Accounts-Receivable for the City thus far.

> Billing/Account-Adjustment Unit:

- Review and analyze account data; compare metrics to public service utility usage in order to remediate inaccuracies.
- Point of contact with respect to bill disputes; employ problem-solving and relationship management capabilities to achieve swift resolutions. Help colleagues and subordinates in finding solutions to account adjustment issues.
- Combine financial and technical expertise to uncover glitches in the BASIS2 Accounting system, an Oracle database system; report issues to System Administrators via Accounting superiors in order to initiate augmented changes.

> Receivable/Internal-Audit Unit:

- Conducted internal audit on transactions that meet audit-sampling criteria; this was done by analyzing accounting records, accounts adjusted (credited or debited), penalties waived, and liens cancelled. Identified and reported material exceptions, as well as data integrity concerns to Accounting Supervisors in a timely manner. Made useful recommendations to remediate issues.
- Performed bank reconciliations as requested by the Cash-Account Unit, thus resolved discrepancies per payment/receipts on accounts.

City of Philadelphia – Philadelphia, PA
**Auditor I – City Controller's Office:** 6/2007 to 4/2008

Completed one year as an Auditor-Trainee prior to this position. Utilized GAAP, GASB, GAAS, and GAGAS standards in performing audits on payroll and inventory. Reviewed previous fiscal year's audit-samples for accuracy and compliance. Utilized flow-charts and internal control questionnaires (ICQ) to test audit-samples for significant deviations; material exceptions were reported to Audit Supervisors in a timely fashion. Also conducted performance audit regarding response-time to emergencies by police, fire/EMS departments.

- **Educational Background:** MBA in Accounting, BS in Business Information Systems - University of Phoenix [2000 – 2005]
- **Software Applications:** Microsoft Office, BASIS-2 (Oracle-System), FAMIS
- **Certification & Professional Affiliation:** Association of Government Accountants, CPA Exam Candidate (AICPA Member), Financial Services Specialty Group of the Institute of Internal Auditors, and A+ Certified. Veteran of the United States Army (Chemical Corps).

when the system was down, work on petitions over 61 days old.

On May 23, 2018, I went to your cubicle to review the documents on your desk. I removed all petitions, returns, and credit notes that had a tracking number. Some were completed and some were not. When I questioned you about this, you stated the interdepartmental screens were unavailable after a certain time in the evening. You took a batch of refund petitions to work on overtime. Sam, the paperwork was not one batch of petitions, but a grocery cart of petitions with notes as far back as February and March. This is an example of your inability to properly organize and delegate assignments.

I have done all that I believe I can to help you through this process. I allowed overtime to far more people than it has been in the past to help you get as many petitions processed as possible. I relieved you of the daily and weekly reports and have everyone completing daily production reports to me for review to free up more time for you to organize and process the petitions that you need to. I added an accountant from another unit that is experienced in Refunds to help during the day to make sure you had all the help needed and to answer any questions, especially if Tom or I are not available.

Each week I have met with you, two to three times to review TIPS screen F625 to see the oldest work and what type of work needs to be assigned to each person. Some of these meetings included a Refunds RCR, and an Accounting Control accountant. Together we review the TIPS reports and plan all the work for the next several days.

These actions were taken to help you not only learn the TIPS system but the Refund process as a whole. Unfortunately, you have not exhibited the organizational skills needed to supervise a unit responsible for processing an extremely high volume of paperwork in a timely fashion. This work is complex as it reaches across all City departments as well as various taxpayers. You have yet to exhibit an understanding of how to prioritize the refunds according to departmental needs. I have consistently directed you as to the order of petitions to be reviewed and processed and explained the reasoning, yet you consistently assign other duties. Although I have also told you on several occasions about staying and working past the acceptable four hours overtime, eight on Saturdays, you continue to do so. In the sixty-eight hours a week you have been working you still cannot organize and prioritize the work.

For these reasons, you are being rejected on probation.

| | | |
|---|---|---|
| 6/5/2018 | _Teresa A. Wiles_ | _Revenue Accounting Mgr_ |
| Date | Signature of Supervisor | Title |

APPROVED:

I _do not_ recommend that this probationer be placed on the eligible list for this class.
_(for or do not)_

| | | |
|---|---|---|
| APPROVED: | _[signature]_ | _Commissioner_ | 6/5/18 |
| | Signature of Head of Office, Board or Commission | Title | Date |

CONSENT OF PERSONNEL DIRECTOR

Subject to verification of the above-stated reasons, I hereby consent to the rejection during the probationary period of the above-named person on the effective date indicated.

| | |
|---|---|
| 6/5/2018 | _[signature]_ |
| Date | Personnel Director |

73-45-64

## Civil Justice Expense and Delay Reduction Plan
## Section 1:03 - Assignment to a Management Track

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

## SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See §1.02 (e) Management Track Definitions of the
### Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation"  as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

Rev. 3/18

### NOTICE TO PLAINTIFFS WITHOUT LAWYERS (*Pro Se*)
### IN EMPLOYMENT DISCRIMINATION CASES
### REGARDING APPOINTMENT OF COUNSEL

The purpose of this notice is to inform plaintiffs in employment discrimination cases who are representing themselves, known as proceeding "*pro se*," that the Court has established a panel of volunteer lawyers willing to represent *pro se* plaintiffs in employment discrimination cases by court appointment. If you are proceeding without a lawyer (*pro se*) and cannot afford a lawyer or are unable to hire a lawyer, you may request a lawyer from the panel by filing a motion for appointment of counsel.

If you would like the Court to place your case on the panel, you must complete the form motion and submit it to the Clerk of Court. It is the decision of the Judge assigned to your case whether to grant your request for counsel. If your request is granted, your case will be placed on the panel, which is a password-protected extranet site that can be viewed electronically by lawyers who are members of the panel. Your case will also be placed in "suspense" for a period of ninety days, which means that the case is on hold for that period of time to give lawyers on the panel time to review your case.

Placement of your case on the panel does not guarantee that your case will be accepted by a lawyer. Unless or until a lawyer files a notice of appearance officially notifying the Judge and other parties that he or she is your counsel of record, you are responsible for your own case. If a lawyer does not volunteer to represent you, you must represent yourself unless you are able to hire a lawyer.

If a lawyer on the panel is interested in your case, he or she will contact you about representing you. You will be required to sign a written representation agreement and cooperate with the lawyer throughout the case. Please note that if you are appointed a lawyer from the

Rev. 3/18

panel you still may be required to pay a contingent fee for your lawyer's services or pay litigation costs.  Once a lawyer from the panel has entered his or her appearance as your lawyer, Court approval will be required to terminate your lawyer's representation.  After your lawyer has been appointed, the Court will schedule your case for an early mediation conference.  If a lawyer is appointed to represent you, all communications with the Court should be through your attorney.

Please remember to keep your address and contact information current with the Court throughout your case so that you receive Court orders, and so that lawyers from the panel can contact you if your case is placed on the panel for appointment.  The Court's local rules require you to update your address within two weeks of an address change.

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## HOW TO PROCEED WITH AN EMPLOYMENT DISCRIMINATION OR REHABILITATION ACT LAWSUIT

### INSTRUCTIONS FOR A PERSON WITHOUT AN ATTORNEY

This packet contains forms to permit you to file the following:

Form 1.      Civil Complaint

Form 2.      Description of Lawsuit for Court Assignment

Form 3.      Application to Proceed <u>In Forma Pauperis</u> (for people unable to pay the filing fee)

Form 4.      Request for Appointment of Attorney

### GENERAL INSTRUCTIONS

### FORM 1 – CIVIL COMPLAINT

You should fill out and file Form 1 – Civil Complaint.   When filling out the complaint, you should remember the following:

1)      You are the plaintiff.   The defendant(s) is the employer(s) being sued.   If you are filing against a government agency or department, use the title of the head of that agency or department – such as Postmaster General, Secretary of the Navy, Secretary of Welfare of Pennsylvania, etc.

2)      Your complaint must be legibly printed by hand or typewritten.

3)      You must personally sign your complaint and declare under penalty of perjury that the facts you allege are correct.

4)      You must attach to the complaint a copy of your Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.   The complaint must be filed within the time specified in your Notice of Right to Sue Letter.

### FORM 2 – DESCRIPTION OF LAWSUIT FOR COURT ASSIGNMENT

When you file your complaint, you must also complete and file an original and one copy of Form 2 – Description of Lawsuit for Court Assignment.

(Rev. 5/2017)

## FORM 3 – MOTION TO PROCEED IN FORMA PAUPERIS ("IFP")

In order for the complaint to be filed, it must be accompanied by the filing fee of $350 plus a $50.00 Administrative Fee.   If you are unable to pay the filing fee, you must file Form 3 – Motion to Proceed In Form Pauperis with the complaint.   On Form 3, you must provide an explanation for why you are unable to pay the filing fee.   For example: "I am unemployed and have no money except unemployment compensation."   Or: "I earn $_____ a week and must support a family of _____."

The judge assigned to your case will decide whether to grant you permission to file your case in forma pauperis.   If the judge grants you permission to proceed in forma pauperis, then the U.S. Marshal's Office will serve copies of your complaint on the defendant(s).   Therefore, you must give the correct name and address of each defendant.

If the judge does not grant permission to proceed in forma pauperis, then you must pay the $350 filing fee.   You then must arrange to serve the complaint on the defendant(s).   The U.S. Marshal's Office will **not** automatically serve the complaint for you if you are not granted in forma pauperis status.

## FORM 4 – REQUEST FOR APPOINTMENT OF ATTORNEY

If you desire to have an attorney and believe you are entitled to have one appointed, you should file Form 4 – Request for Appointment of Attorney.   Attorneys are selected from the Plaintiff's Employment Panel, as outlined in the enclosed Program Description.   Please read this enclosure carefully.

You may obtain a copy of your investigative file.   Federal employees may do so from the federal agency involved by calling that agency.   Other employees can obtain a copy from the Equal Employment Opportunity Commission (EEOC) by writing to:

> Fredricka Warren
> Christine Spriggs
> EEOC, Information Specialists
> 801 Market Street, Suite 1300
> Philadelphia, PA 19107

When you have completed your forms, bring them or mail them to:

> Clerk of Court
> United States District Court
> 601 Market Street, Room 2609
> Philadelphia, PA 19106-1797

If you have any questions, you may call the Clerk's Office at (215) 597-7704 and ask for the Pro Se Writ Clerk.

**NOTE:** You should keep a copy of the forms that you file for your records.

# MANAGEMENT DIRECTIVE

### Commonwealth of Pennsylvania
### Governor's Office

| | |
|---|---|
| **Subject:** Classified Service Probationary Periods | **Number:** 580.8 Amended |
| **Date:** June 14, 2013 | **By Direction of:** *Jeffrey T. Wallace* Jeffrey T. Wallace, Executive Director State Civil Service Commission |
| **Contact Agency:** State Civil Service Commission, Bureau of Policy and Information Services, Telephone 717.787.5855 | |

**This directive establishes policy, responsibilities and procedures for classified service employees serving probationary periods, including the extension thereof.   Marginal dots are excluded due to major changes.**

1. **PURPOSE.**  To establish policy, responsibilities and procedures for classified service employees serving probationary periods, including the extension thereof.

2. **SCOPE.**  Applies to all state agencies, which are identified in *Civil Service Act, 71 P.S. § 741.3(d)*, and to state agencies and political subdivisions of the commonwealth which have contracts with the State Civil Service Commission (SCSC) for services and facilities as provided for in *Civil Service Act, 71 P.S. § 741.212*.

3. **OBJECTIVE.**  To ensure classified service employees and appointing authorities understand and comply with the SCSC rules and regulations pertaining to probationary periods; and to clarify the impact on classified service employees' rights and civil service status in relation to various personnel movements.

4. **DEFINITIONS.**

   a. **Appointing Authority.**  Officers, boards, commissions, persons or group of persons having power by law to effect personnel transactions in the classified service.

   b. **Certification of Eligibles.**  An employment list, promotion list or reemployment list.

c. **Civil Service Leave of Absence.**  A temporary interruption of employment for which the employee is given a specified period of leave for purposes such as illness, school attendance, military duty or training or employment in a non-civil service position.

d. **Contractual Personnel System.**  A system maintained by the SCSC that contains the personnel transactions documenting work histories of employees of political subdivisions of the commonwealth and other entities having a contract with the SCSC.

e. **Demotion.**  The voluntary or involuntary movement of an employee to a job title assigned to a pay range with a lower maximum salary except when the movement is the result of a valid reclassification downward.

f. **Employee.**  A person legally occupying a position in the classified service.

g. **List Life.**  The length of time that an individual's name will appear on an eligible list.  The individual must have successfully examined for and met the minimum experience and training requirements for the job title in order to have been placed on the eligible list.

h. **Probationary Period.**  A preliminary period of employment for the purpose of determining the fitness of an employee for regular civil service status.

i. **Probationary Status Employee.**  A person serving a probationary period prior to acquiring regular status in a classified service position.

j. **Promotion.**  The movement of an employee to another job title in a pay range with a higher maximum salary.

k. **Reassignment.**  The movement of an employee from one position to another position, in the same job title or another job title for which the employee qualifies, at the same maximum salary.

l. **Regular Status.**  Standing achieved by a classified service employee who has successfully completed a probationary period.

m. **Trainee.**  A qualified person appointed or promoted to a job title identified as a training level job title.

n. **Transfer.**  The movement of an employee from one appointing authority to a different appointing authority.

5. **POLICY.**

a. Civil service probationary periods are preliminary periods of employment, the purpose of which is to determine the fitness of an employee for regular civil service status.  Probationary periods required by a collective bargaining agreement or memorandum of understanding are separate and distinct from civil service probationary periods.

**b.** Probationary periods must be successfully completed by employees for all classified service appointments or promotions before regular status is conferred. Appointing authorities must act affirmatively to confer regular status by evaluating the employees' performance and notifying employees that such performance was satisfactory.



**c.** Probationary periods for all non-trainee job titles shall be six months (defined as 180 calendar days – six months at 30 days per month). For trainee job titles, the probationary period is as designated in *Management Directive 535.5, Use of Trainee Classes in the Classified Service.*

**d.** Probationary periods for part-time positions shall be prorated against the number of hours in a regular workweek. Employees who satisfactorily complete the required number of hours shall have regular status conferred. For example, for a 37.5 hour workweek, a six month probationary period would equate to 975 hours; 12 months would be 1,950 hours; 15 months would be 2,437.50 hours; and 18 months would be 2,925 hours. For a 40 hour workweek, a six month probationary period would equate to 1,040 hours; 12 months would be 2,080 hours; 15 months would be 2,600 hours; and 18 months would be 3,120 hours. **Note:** For part-time positions, overtime hours may be counted toward the accumulation of hours necessary to complete a probationary period. However, the probationary period may not be less than six months, calculated as 180 calendar days. Therefore, if 975 hours are met prior to reaching six months, the employee would still not be able to achieve regular status until that six month time frame is met.

**e.** Appointing authorities may extend probationary periods to a maximum of 18 months (defined as 545 calendar days – 365 calendar days plus six months at 30 days per month) when probationary employees are not performing satisfactorily in one or more performance factors or ratings, or when more time is needed to adequately evaluate probationary employees' performance because of a supervisory change, reassignment, transfer or similar action during the probationary period. Such extensions may be reduced to assign regular status when performance is deemed satisfactory. Probationary periods for trainee job titles can be extended to a maximum of 24 months (defined as 730 calendar days – two years at 365 days per year).

**f.** Probationary status employees, in other than trainee job titles, who exceed 18 months in probationary status shall have regular status conferred on the day after the 18 month limit is reached.

**g.** Probationary status employees who occupy trainee job titles for more than 24 months shall be promoted, with regular status, to the appropriate journey level job title identified in *Management Directive 535.5, Use of Trainee Classes in the Classified Service*, on the day after the 24 month limit is reached.

**h.** Satisfactory periods of employment in emergency or temporary status may be credited toward completion of probationary periods when employees subsequently are assigned probationary status in the same job title, provided such service is continuous. However, employees assigned to work out-of-class, prior to being placed in probationary status in the job title, shall not have the time spent working out-of-class credited toward completion of the probationary period.

**i.** Probationary status employees who are reassigned to another position in the same or similar job title in the same appointing authority or who demote to a lower level job title within the same or similar class series in the same appointing authority shall be credited with the time served in the previous position toward the completion of the probationary period required for the new position. **Note:** Similar job title means one having the same maximum salary rate in the compensation plan, involving essentially the same or lower level duties and responsibilities, requiring essentially the same or lower level minimum qualifications, and calling for the same or lower level knowledge, skills and abilities.

**j.** Probationary status employees who are reassigned or demoted to another position in an unrelated job title within the same appointing authority may be credited with the time served in the previous position toward the completion of the probationary period required for the present position, unless the appointing authority requires that a new, full probationary period be served as a condition of the reassignment or demotion and notifies the employee, in writing, of this requirement. **Exception:** Probationary status employees who are reassigned or demoted to trainee job titles shall serve a new, full probationary period.

**k.** Probationary status employees transferring from one appointing authority to another appointing authority may continue to serve the remainder of their probationary period in the new position, unless the gaining appointing authority requires that a new, full probationary period be served as a condition of the transfer and notifies the employee, in writing, of this requirement. **Exception:** If the probationary status employee is transferring to a position which will result in a promotion, a new, full probationary period must be served.

**l.** Regular status employees who are placed in probationary status as a result of a promotion shall have a right of return, whether within an appointing authority or between appointing authorities, as follows:

    **(1)** During the first three months of the probationary period, probationary status employees have the option to return to the position previously held.

    **(2)** At any time after the first three months of the probationary period, probationary status employees may return to their previous position or classification with written consent of the appointing authorities.

    **(3)** If the probationary status employees' services are found not to be satisfactory by the appointing authority, probationary employees shall be returned to their previous position or job title.

**m.** Probationary status employees placed in another probationary status as a result of a promotion or other personnel movement shall not have a right of return, unless the initial probationary status was the result of a promotion, in which case the right of return would be to the last regular status position held. For example, if a regular status Administrative Officer 1 was promoted to an Administrative Officer 2 and, while in probationary status, was promoted to an Administrative Officer 3 or reassigned to a Budget Analyst 2, the right of return would be to the Administrative Officer 1 position with regular status. The employee would not have a right of return to the Administrative Officer 2 position.

**n.** A probationary status employee who has served any portion of the probationary period and is given a temporary appointment to a higher level position in the same or closely related series of classes under the same appointing authority may have the period of the higher level service credited toward the lower level probationary period. Written notice to that effect shall be given to the employee on or before the date the probationary period expires.

**o.** If an appointing authority extends an employee's probationary period, it shall notify the employee, in writing, at least one workday prior to the effective date of the extension. The notice to the employee shall include the new probationary period ending date and the reason(s) for the extension. This notice does not need to be forwarded to the SCSC, unless specifically requested by an SCSC staff member.

**p.** Probationary periods shall be adjusted when probationary status employees return from civil service leaves of absence by extending the probationary period for a period equal to the time on leave. This adjustment shall be made in workdays, not calendar days. When the leave exceeds 30 consecutive workdays, except for military leave, the appointing authority may require that a new, full probationary period be served. **Note:** In applying this paragraph of the directive, the probationary period ending date should not be extended on a day-for-day basis when probationary status employees use paid annual, personal or sick leave.

**q.** Probationary periods of employees on military leave of absence shall be adjusted, regardless of the length of the leave.

**r.** Probationary status employees who are removed and subsequently ordered restored to duty will resume the probationary period effective on the date of restoration.

**s.** If a probationary status employee resigns, is removed, is granted a civil service leave of absence, is furloughed or is demoted and requests to be restored to the civil service eligible list, the Executive Director, SCSC, may authorize the restoration of the employee to the same list or a comparable list to that from which appointed, provided the employee's list life has not expired.

**t.** **References:** *Warwood v. Lancaster County Board of Assistance, 32 Pa. Commonwealth Court 468, 379 A.2d 135 4 (1977); Sections 603, 804 and 804.1, Civil Service Act; 4 Pa. Code §§ 97.31, 97.32, 97.33, 97.34, 97.36, 97.37, 97.38, 97.39, 99.21, 99.24, 99.34, 99.43, 101.32, 101.54, 105.1, 105.2, 105.4, and 105.5; Management Directive 535.5, Use of Trainee Classes in the Classified Service and Management Directive 580.11, Documentation of Classified Service Personnel Actions;* and applicable collective bargaining agreements.

## 6. RESPONSIBILITIES.

**a.** **Appointing Authorities** shall:

    **(1)** Provide written notification to employees upon appointment or promotion that states the ending date of the probationary period.

    **(2)** Monitor employees' probationary periods to ensure that employees do not exceed the maximum amount of time allowed to be in probationary status.

**(3)** Notify probationary status employees if they have successfully completed the probationary period; or, if the probationary period is extended, provide written notification to the employee, at least one workday in advance of the original probationary period ending date, of the reason(s) for the extension and the new probationary period ending date.

**(4)** Ensure employees' work histories are accurate and reflect the correct civil service status.

**b. The State Civil Service Commission** shall:

**(1)** Provide guidance to appointing authorities on classified service probationary periods.

**(2)** Audit appointing authorities' personnel actions pertaining to probationary periods and extensions or reductions thereof.

**(3)** Notify appointing authorities when personnel actions are found which are not in compliance with the *Civil Service Act* or other relevant guidelines.

## 7. PROCEDURES.

**a.** Appointing authorities hiring employees into probationary status positions shall notify the employees in writing of their appointment or promotion. The notification letter shall state the job title, effective date, rate of pay, bargaining unit (if applicable), ending date of probationary period and indicate that if the employee's name appears on any civil service eligible lists that the employee's name will be deactivated by the SCSC from the eligible list for the job title which hired or promoted, as well as all equal and lower level job titles. In addition, for those regular status employees placed in probationary status as a result of a promotion, specific rights of return to previously held positions or classifications shall be provided.

**b.** Appointing authorities shall ensure the proper appointment, promotion or other relevant personnel transaction is applied to the employee's work history and that the employee is assigned probationary status.

**(1)** For state agencies, select the appropriate SAP action reason code. Documentation is not required to be forwarded to the SCSC, unless specifically requested by an SCSC staff member.

**(2)** For political subdivisions of the commonwealth which have contracts with the SCSC for services and facilities as provided for in the *Civil Service Act* and who are authorized to enter data into the Contractual Personnel System, reference should be made to the Contractual Personnel System Transaction Manual to ensure the appropriate transaction code is used and all necessary data fields are completed. Documentation is not required to be forwarded to the SCSC, unless specifically requested by an SCSC staff member.

**(3)** For political subdivisions which receive commonwealth funding for human services programs and that do not have authorization to enter data into the Contractual Personnel System, submit Form SCSC-100, Report of Personnel Transactions for Non-State Employees, within five business days of the effective date of the personnel action to the appropriate state funding agency. Reference should be made to the Contractual Personnel System Transaction Manual to ensure the appropriate transaction is used and all necessary data fields are completed. Documentation is not required to be forwarded to the SCSC, unless specifically requested by an SCSC staff member.

**(4)** For applicable Housing Authorities or other entities having a contract with SCSC for services and facilities not referenced in paragraphs 7.b.(2) or 7.b.(3) of this directive, submit a copy of the written notice referenced in paragraph 7.a. of this directive and Form SCSC-100, Report of Personnel Transactions for Non-State Employees, within five business days of the effective date of the personnel action to the following address:

State Civil Service Commission
Bureau of Policy and Information Services
3rd Floor, Strawberry Square Complex
320 Market Street
Telephone: 717.787.5855
Fax: 717.783.0419

Or, for U.S. Postal Service deliveries:
P.O. Box 569
Harrisburg, PA 17108-0569

Or, by e-mail at: mailto:ra-cs-paad@pa.gov

Reference should be made to the Contractual Personnel System Transaction Manual to ensure the appropriate transaction is used and all necessary data fields are completed.

**c.** For those regular status employees placed in probationary status as a result of a promotion, if at any time during the first three months of the probationary period, the employee requests to be returned to the position previously held, the effective date used to transact the movement will be determined by the appointing authority or by mutual agreement between both appointing authorities, if the promotion was from one appointing authority to another appointing authority.

**d.** For those regular status employees placed in probationary status as a result of a promotion, at any time after the first three months until the successful completion of the probationary period, the employee may request to be returned to the position or job title previously held. However, the effective date used to transact the return will be decided by the appointing authority or by mutual agreement between both appointing authorities, if the promotion was from one appointing authority to another appointing authority.

**e.** Regular status employees placed in probationary status as a result of a promotion may be returned to their previous position or job title at any time within the probationary period if the appointing authority finds that they are not satisfactorily performing in the job title to which promoted. The effective date used to transact the return will be decided by the appointing authority or by mutual agreement between both appointing authorities, if the promotion was from one appointing authority to another appointing authority.

**f.** After an appointing authority determines that a former regular status employee, placed in probationary status as a result of a promotion, is to be returned to the previous position or job title, the appointing authority shall provide written notification to the employee indicating the job title and civil service status to which being returned, effective date of return, rate of pay and bargaining unit (if applicable). If the return is due to the employee not satisfactorily completing the probationary period, the written notification shall also include the reason(s) for return and civil service rights of appeal. Return transactions shall be processed as follows:

**(1)** For state agencies, blanket certification number 99738 is to be used to process returns. Documentation is not required to be forwarded to the SCSC, unless specifically requested by an SCSC staff member.

**(2)** For political subdivisions of the commonwealth which have contracts with the SCSC for services and facilities as provided for in the *Civil Service Act* and who are authorized to enter data into the Contractual Personnel System, transaction code 408.1 and blanket certification number 99738 are to be used to process returns. Documentation is not required to be forwarded to the SCSC, unless specifically requested by an SCSC staff member.

**(3)** For political subdivisions which receive commonwealth funding for human services programs that do not have authorization to enter data into the Contractual Personnel System, submit Form SCSC-100, Report of Personnel Transactions for Non-State Employees, within five business days of the effective date of the personnel action to the appropriate state funding agency, using transaction code 408.1 and blanket certification number 99738. Documentation is not required to be forwarded to the SCSC, unless specifically requested by an SCSC staff member.

**(4)** For applicable Housing Authorities or other entities having a contract with SCSC for services and facilities not referenced in paragraphs 7.b.(2) or 7.b.(3) of this directive, submit a copy of the written notice referenced in paragraph 7.f. of this directive and Form SCSC-100, Report of Personnel Transactions for Non-State Employees, within five business days of the effective date of the personnel action to the address in paragraph 7.b.(4) of this directive, using transaction code 408.1 and blanket certification number 99738.

**g.** Appointing authorities extending or reducing probationary periods in accordance with this directive shall provide written notification to employees at least one workday in advance of the original probationary period ending date. Written notice shall include the reason(s) for the extension or reduction and the new probationary period ending date. In addition, the personnel transaction shall be processed as follows:

**(1)** For state agencies, select the appropriate SAP action reason code. Documentation is not required to be forwarded to the SCSC, unless specifically requested by an SCSC staff member.

**(2)** For political subdivisions of the commonwealth which have contracts with the SCSC for services and facilities as provided for in the *Civil Service Act* and who are authorized to enter data into the Contractual Personnel System, transaction code 731.0 for extensions or 730.0 for reductions is to be used to process the extension or reduction. Documentation is not required to be forwarded to the SCSC, unless specifically requested by an SCSC staff member.

**(3)** For political subdivisions which receive commonwealth funding for human services programs that do not have authorization to enter data into the Contractual Personnel System, submit Form SCSC-100, Report of Personnel Transactions for Non-State Employees, within five business days of the effective date of the personnel action to the appropriate state funding agency, using transaction code 731.0 for extensions or 730.0 for reductions. Documentation is not required to be forwarded to the SCSC, unless specifically requested by an SCSC staff member.

**(4)** For applicable Housing Authorities or other entities having a contract with SCSC for services and facilities not referenced in paragraphs 7.b.(2) or 7.b.(3) of this directive, submit a copy of the written notice referenced in paragraph 7.g. of this directive and Form SCSC-100, Report of Personnel Transactions for Non-State Employees, within five business days of the effective date of the personnel action to the address in paragraph 7.b.(4) of this directive, using transaction code 731.0 for extensions or 730.0 for reductions.

**h.** Appointing authorities must act affirmatively to confer regular status by evaluating the employees' performance and notifying employees that they have successfully completed their probationary period including the date that they will have regular status conferred. Employee Performance Review Reports or other written notification may be used to convey successful completion of the probationary period. The personnel transaction shall be processed as follows:

**(1)** For state agencies, select the appropriate SAP action reason code. Documentation is not required to be forwarded to the SCSC, unless specifically requested by an SCSC staff member.

**(2)** For political subdivisions of the commonwealth which have contracts with the SCSC for services and facilities as provided for in the *Civil Service Act* and who are authorized to enter data into the Contractual Personnel System, transaction code 704.0 is to be used to process the movement from probationary to regular status. Documentation is not required to be forwarded to the SCSC, unless specifically requested by an SCSC staff member.

**(3)** For political subdivisions which receive commonwealth funding for human services programs that do not have authorization to enter data into the Contractual Personnel System, submit Form SCSC-100, Report of Personnel Transactions for Non-State Employees, within five business days of the effective date of the personnel action to the appropriate state funding agency, using transaction code 704.0. Documentation is not required to be forwarded to the SCSC, unless specifically requested by an SCSC staff member.

**(4)** For applicable Housing Authorities or other entities having a contract with SCSC for services and facilities not referenced in paragraphs 7.b.(2) or 7.b.(3) of this directive, submit a copy of the written notice referenced in paragraph 7.h. of this directive and Form SCSC-100, Report of Personnel Transactions for Non-State Employees, within five business days of the effective date of the personnel action to the address in paragraph 7.b.(4) of this directive, using transaction code 704.0.

**i.** Appointing authorities with access to the SCSC's IBM AS/400 system can find a probationary period calculator on the main menu. The "Calculation of Probationary Period End Date" item can be used to determine an employee's probationary date by entering the probationary begin date, probationary period and hours worked/workweek.

**This directive replaces, in its entirety, *Management Directive 580.8*, dated October 5, 2004.**

## CSR per Promotional List & Performance Evaluations

**samuel araoye**
Thu 2/14/2019 9:01 AM
**To:** esse M Jordan <Jesse.M.Jordan@Phila.gov>

Good morning sir;

From the portion highlighted below, this would tell you why... after my former manager lied about 2nd month evaluation on the rejection, they falsified my 5th-month report to read 2nd-month (in all attempts to negate my 5th-month report dated 4/17/18, in which I earned superior rating.

Please let me know what needs be done next to file this grievance; I should not have been rejected on probation in the first place; not with a falsified rejection notice (uncompleted notice per CSR).

Thanks a lot.

### PROMOTIONAL EXAMINATIONS.

**9.021 - GENERAL.** Unless vacancies are filled by demotion, transfer, reinstatement, or by certification from a layoff list, they shall be filled so far as practicable by the promotion of permanent employees in the Civil Service.

**9.022 - NATURE OF EXAMINATIONS.** In promotional examinations, consideration shall be given to the competitor's qualifications, record of performance, seniority and conduct and to other matters deemed pertinent by the Director.

**9.023 - PERFORMANCE REPORTS.** The record of performance given consideration in a promotional examination shall be the latest performance rating for the employee properly filed with the Director at least thirty (30) days prior:

a. to the date of announcement of a non-continuous or periodic promotional examination or

b. to the date on which the competitor takes a continuous promotional examination.

Employees in classes of positions represented by District Council 47 or in Non-Represented classes who have not received an annual performance evaluation during the twelve month period immediately preceding this date shall be presumed to have had an overall rating of Satisfactory for purposes of determining eligibility to compete in promotional examinations.

**If the latest performance rating on file is a second month probationary rating, it shall be disregarded and the immediately preceding regular or special rating shall apply. In the event that there is no rating on file for an employee or only a second month probationary rating, the employee shall be considered to have a satisfactory rating for the purpose of this Regulation.**

**9.0231 -**   **Disqualification For Performance Reports.**   A performance rating of less than Satisfactory shall disqualify the competitor from competing in the examination and from having his or her name appear on the eligible list.

**9.0232 -**   **Credit For Performance Reports.**

    **9.02321 -**   For employees in classes represented by District Council 47 and non-represented employees, overall performance ratings of Superior and Outstanding shall entitle the competitor to have one and one-half (1_1/2) and three (3) points respectively added to his or her final average, provided however, that such final average is equal to or more than the minimum passing grade or average score established for the examination.

    **9.02322 -**   For employees in classes represented by District Council 33, uniformed and investigatory personnel of the Police Department and District Attorney's Office performance report evaluations will be based on either a Satisfactory or Unsatisfactory overall rating, without any numerical evaluation reference to such overall rating. To qualify for competition in a promotional examination, an employee shall be required to receive a Satisfactory overall rating.

certified in accordance with their standing on their list, as provided in Sections 11.05 and 11.04 of this Regulation.

**11.08 - OBJECTION TO AND SUBSTITUTION OF ELIGIBLES.** An appointing authority may submit a written statement to the Director requesting removal of the name(s) of eligible candidate(s) from a certification. Any cause contained in Regulation 11.09 or in a subsection of that regulation shall be deemed sufficient reason for removal, but the Director may sustain objections for other cause which would, if assigned as a reason for dismissing an employee, be acceptable to the Director. If the request is approved by the Director, the name of the eligible list shall be stricken from the certification, as the Director may deem appropriate, and the next highest name on the eligible list shall be certified.

The process for the removal of an eligible candidate from a certification shall be the same process used for removal of an eligible candidate from a certification as defined in Regulation 10.094.

An eligible candidate whose name has been removed from a certification shall have the same rights to request restoration to the certification as defined in Regulation 10.10 for a candidate whose name has been removed from an eligible list.



**11.081 - REMOVAL OF THE NAME OF AN EMPLOYEE FROM AN ELIGIBLE LIST OR A CERTIFICATION WHEN THE EMPLOYEE HAS PERMANENT STATUS IN THE SAME CLASS.** At the request of the appointing authority, the Director may remove the name of an eligible candidate from a departmental promotional eligible list or a certification from any type of eligible list to fill a position for a class if the candidate is employed in the same department and has permanent status in the same class. The appointing authority shall notify the candidate of the removal from the eligible list or certification within five (5) business days of the removal.

**11.09 - A**
te
a
c
a
b

**11.091 - INTERVIEWING REFERRED ELIGIBLES.** All eligibles referred to an appointing authority shall be interviewed by him or her or by some other responsible designee, provided however, that he or she need not interview an eligible who:

1. was previously interviewed personally as a referral from the same eligible list, or
2. is a non-veteran, certified with a veteran, or
3. is certified from a departmental promotional list and whose record of performance is personally known to the interviewer.

on within
n from
the

s will not

**11.092 - BACKGROUND INVESTIGATIONS.** Every person offered employment with the City shall be required to complete a background investigation questionnaire, the form and content of which shall be prepared by the Personnel Director. The Office of the Inspector General, or the Personnel D or their designee shall perform such background investigation, based on the completed questionnaire and the requirements of the position, as the Inspector General or the Personnel Director deem appropriate.

**11.092-1 - Background Investigation As A Condition Of Employment.** The background investigation questionnaire must be completed truthfully and within the timeframe established by the Director as a condition of employment by each person offered employment with the City. The questionnaire must be completed and returned to the Personnel Department prior to the start of employment. The prospective employee





to me ∨

SAMUEL ARAOYE
1834 Margaret St.
PHILADELPHIA, PA 19124

Dear SAMUEL ARAOYE:

Congratulations! You passed the examination for the position of **Departmental Accounting Systems Specialist, (2A19-20170213-PR-00).**

The Published List of Candidates has been established. Your score is **78.35057** and your rank on the eligible list is currently **2.** Please be advised that your rank may change as a result of appeals, removal of candidates from the eligible list, or other actions that occur after the establishment of the original eligible list.

The Eligible List for this examination will be established when the first candidates are certified and scheduled for interviews. At that time, the maximum two year duration of the eligible list will begin.





🗑 **Delete**    ⊘ **Junk**    **Block**    ⋯

## CSR per Promotional List & Performance Evaluations

ⓘ   Label: 50 Day Sent Items Purge - Allow Dumpster Recovery (50 days) Expires: Fri 4/5/2019 10:01 AM

 **samuel araoye**
Thu 2/14/2019 9:01 AM
Jesse M Jordan ⌄

       👍   ↩   ⤺   →   ⋯

Good morning sir;

     From the portion highlighted below, this would tell you why... after my former manager lied about 2nd month evaluation on the rejection, they falsified my 5th-month report to read 2nd-month (in all attempts to negate my 5th-month report dated 4/17/18, in which I earned superior rating.

     Please let me know what needs be done next to file this grievance; I should not have been rejected on probation in the first place; not with a falsified rejection notice (uncompleted notice per CSR).

     Thanks a lot.


### PROMOTIONAL EXAMINATIONS.

     **9.021 - GENERAL.** Unless vacancies are filled by demotion, transfer, reinstatement, or by certification from a layoff list, they shall be filled so far as practicable by the promotion of permanent employees in the Civil Service.

     **9.022 - NATURE OF EXAMINATIONS.** In promotional examinations, consideration shall be given to the competitor's qualifications, record of performance, seniority and conduct and to other matters deemed pertinent by the Director.

     **9.023 - PERFORMANCE REPORTS.** The record of performance given consideration in a promotional examination shall be the latest performance rating for the employee properly filed with the Director at least thirty (30) days prior:

         a. to the date of announcement of a non-continuous or periodic promotional examination or

         b. to the date on which the competitor takes a continuous promotional examination.

As of 6/6/18, I already put in status
more than 8 month's work hours.
Case 2:19-cv-00719-WB Document 1-1 Filed 02/21/19 Page 23 of 45

| REJECTION NOTICE DURING PROBATIONARY PERIOD<br>*(Prepare in Triplicate)* | CITY OF PHILADELPHIA<br>PERSONNEL DEPARTMENT |
|---|---|

| NAME OF PROBATIONER<br>Samuel Araoye, PR# 245661 | *Since Probationary period is not by* |
|---|---|

*calender month, I already completed*

| ADDRESS<br>4842 Summerdale Ave., Philadelphia, PA 19124 | *probationary period per* |
|---|---|

*regular and overtime work*

| CLASSIFICATION OF POSITION<br>Accounting Supervisor | *hours. Hence, I cannot be rejected.* |
|---|---|

DIVISION AND/OR DEPARTMENT
Enforcement – Accounting Control (36-AA-07-01)

| EFFECTIVE DATE OF REJECTION<br>June 6, 2018 | DATE OF LAST DAY OF PROBATIONARY PERIOD<br>June 17, 2018 |
|---|---|

**TO THE PROBATIONER ABOVE - NAMED:**

You are hereby notified that you have been rejected from further employment from the position above described, effective at the close of work on the date of rejection above indicated, which is not later than the last day of your probationary period in that position. The Philadelphia Home Rule Charter and the Civil Service Regulations do not permit an appeal from this action to the Civil Service Commission. If you had permanent civil service status in another class immediately prior to your being appointed to this position, you may have a right to that position.

The specific reasons for your rejection from the above position are as follows:

Sam, you received your second month evaluation on April 17, 2018; which had the overall rating of superior. The only aspect of concern was your interaction with some of your subordinates. To date this matter is resolved.

The Refund Unit is very complex due to the various refunds we process, each requiring a different process tactic. For this reason, the Refund Supervisor needs to have and maintain excellent organization skills, and the ability to prioritize work based on departmental needs. Specifically, the supervisor must assign the oldest refund petition first. All petition requests must be processed within 60 days and refund requests by returns must be processed in 75 days. If they are not processed timely, they will accumulate interest. In addition, we have inter-departmental refunds, credit notices, and income-based refunds which do not have the potential for interest.

Over the last three months, it became apparent petitions were missing. As the supervisor, you sent out a unit email to all refund personnel, as well as employees working in refund for overtime. You informed them to look through their desk and make sure they did not have any of the missing work. In April, I held a unit meeting and implemented a new tracking method to track work more efficiently. After the meeting I observed your cubicle in disarray and instructed you to organize your work and look for refund petitions you were not working on, and properly delegate them for processing according to the new implemented process.

During the last week of April, it became apparent you were unable to organize the work in your cubicle. This resulted in me assigning a Service Representative to assist you with organizing your work. You were instructed to load boxes with the paperwork in your cubicle. The Service Representative took the boxes and organized the work pending processing and filed the complete work. Once they organized the documents they were returned to you for processing.

During the week of May 7th, you told me you assigned the box of unprocessed petitions to one of your accountants to track and complete as he tracked them. Again, I informed you that accountants are not to be tracking petitions and oldest petitions are to be processed first. A few days later, I observed you tracking petitions. I took the box from you and assigned it to a Revenue Collection Rep to track. I asked you for any tracked refund petitions and instructed you to complete the inter-departmental refunds.

On May 21, 2018, when you and I met to go over the work flow, you informed me you instructed a service representative to calculate income-based petitions. Again, I reminded you these were not a priority at the time.

On May 22, 2018, I came by your cubicle to discuss some issues with you and your cubicle was in disarray yet again. When asked about the piles of paperwork, you stated you thought you should work on credit notes. These are untracked and can easily be processed at another time. I previously instructed you to work on the inter-departmental refunds and

*[handwritten annotation at top:] out ____ ____ ____ and was being asked to correct this notice, but did not do so until after I was bamboozled out of office*

when the system was down, work on petitions over 61 days old.

On May 23, 2018, I went to your cubicle to review the documents on your desk. I removed all petitions, returns, and credit notes that had a tracking number. Some were completed and some were not. When I questioned you about this, you stated the interdepartmental screens were unavailable after a certain time in the evening. You took a batch of refund petitions to work on overtime. Sam, the paperwork was not one batch of petitions, but an assortment of petitions with notes as far back as February and March. This is an example of your inability to properly organize and delegate assignments.

I have done all that I believe I can to help you through this process. I allowed overtime to far more people than it has been in the past to help you get as many petitions processed as possible. I relieved you of the daily and weekly reports and have everyone completing daily production reports to me for review to free up more time for you to organize and process the petitions that you need to. I added an accountant from another unit that is experienced in Refunds to help during the day to make sure you had all the help needed and to answer any questions, especially if Tom or I are not available.

Each week I have met with you, two to three times to review TIPS screen F625 to see the oldest work and what type of work needs to be assigned to each person. Some of these meetings included a Refunds RCR, and an Accounting Control accountant. Together we review the TIPS reports and plan all the work for the next several days.

These actions were taken to help you not only learn the TIPS system but the Refund process as a whole. Unfortunately, you have not exhibited the organizational skills needed to supervise a unit responsible for processing an extremely high volume of paperwork in a timely fashion. This work is complex as it reaches across all City departments as well as various taxpayers. You have yet to exhibit an understanding of how to prioritize the refunds according to departmental needs. I have consistently directed you as to the order of petitions to be reviewed and processed and explained the reasoning, yet you consistently assign other duties. Although I have also told you on several occasions about staying and working past the acceptable four hours overtime, eight on Saturdays, you continue to do so. In the sixty-eight hours a week you have been working you still cannot organize and prioritize the work.

For these reasons, you are being rejected on probation.

| | | |
|---|---|---|
| 6/5/2018 | Noreen A. Skierka | Revenue Accounting Mgr. |
| Date | Signature of Supervisor | Title |

I __do not__ recommend that this probationer be placed on the eligible list for this class.

(do or do not)

APPROVED: ___Frank Breslin___ ___Commissioner___ ___6/5/18___
Signature of Head of Office, Board or Commission    Title    Date

### CONSENT OF PERSONNEL DIRECTOR

Subject to verification of the above-stated reasons. I hereby consent to the rejection during the probationary period of the above-named person on the effective date indicated.

___6/5/2018___    ___Pedro Rodriguez___
Date    Personnel Director

73-S-64    COPIES TO: EMPLOYEE, DEPARTMENT, PERSONNEL DIRECTOR

From: Kia J. Miller

Sent: Wednesday, June 6, 2018 4:57:12 PM

To: Samuel araoye; Noreen Skirkie

Subject: Corrected Rejection

Attached is the correct Rejection Notice. Only change was the overall performance rating of the 2nd month evaluation.

Good afternoon,

Warm regards,

*Kia J. Miller, MS, SHRM-CP*

Senior Departmental HR Associate

Department of Revenue

Phone: 215-686-6557

Fax: 215-686-3856

kia.miller@phila.gov

Philadelphia Municipal Services Building

1401 John F Kennedy Blvd, Room 430

Philadelphia, PA 19102

*"When You Least Expect It, Something Great Will Come Along. Something Better Than You Ever Planned For. Be Patient. Be Smart. Stay Focused."*

From: samuel araoye
Sent: Wednesday, June 6, 2018 5:48:22 PM
To: O. Miller
Subject: Fw: Corrected Rejection

Hi Kia,

he knows theres was never a 2nd month evaluation during my probation; the one dated 4/17/18 is for 5th month, and I did not sign any other evaluation after that. As of 4/17/18, the my overtime hours converted to regular hours, and added to regular hours equates at least 7 months altogether. Meaning, I passed probation by the fact that no evaluation report was given to me by the time I already put in 5 months of work.

but i was deceptively rejected on probation, and even wrongly escorted out of my office, and ushered back to my old unit today.

I want to request a meeting on this, and I want my union President, Ms. Pamela Robinson in attendance, along with DC47 President, Mr. Fred Wright.

tha...

amuel O. Araoye



## 530-2018-04056 - (Pls dual with PHRC) Evaluation and rejection papers attached [Incident: 180725-000006]

1 message

---

**EEOC - I I G** <info@eeoc.gov>
Reply-to: EEOC - I I G <info@eeoc.gov>
To: afroxylin7@gmail.com

Wed, Aug 29, 2018 at 3:12 PM

---

Recently you requested personal assistance from our on-line support center. Below is a summary of your request and our response.

If this issue is not resolved to your satisfaction, you may reopen it within the next 7 days.

Thank you for allowing us to be of service to you.

**Subject**

530-2018-04056 - (Pls dual with PHRC) Evaluation and rejection papers attached

**Discussion Thread**

**Response Via Email (Inquiry)**                                                08/29/2018 02:12 PM

Thank you for contacting us. We apologize for the delay in responding to your E-mail.

When you e-mail info@eeoc.gov you are reaching the U.S. Equal Employment Opportunity Commission (EEOC) Intake Information Group, which provides general information about the laws we enforce via e-mail. We are unable to answer your specific questions.

You can find out the detailed information by calling our EEOC field office where your charge is filed. Contact information for that office is:

Philadelphia District Office
801 Market Street, Suite 1300
Philadelphia, PA 19107-3127
Direct Dial: 1-215-440-2600/2601
Fax: 215-440-2606

Alternatively, you may call us at 1-800-669-4000 (VideoPhone: 1-844-234-5122) to discuss your situation.

Sincerely,

U.S. Equal Employment Opportunity Commission

**Auto-Response**                                                              07/25/2018 01:45 AM

Thank you for contacting the United States Equal Employment Opportunity Commission. This automated response confirms receipt of your inquiry and is not intended to address your specific questions. For those of you wishing to file a charge of employment discrimination, please note that there is a time limit of either 180 or 300 days to file a charge, depending on a number of factors. If you want to begin the process, you can use our online assessment tool https://publicportal.eeoc.gov You can not file a charge via email. We will respond to your specific questions promptly.

**Customer By Email (SAM ARAOYE)**                                              07/25/2018 01:45 AM

Good Morning;

City of Philadelphia's Civil Service Commission in its response to my request of seeking redress regarding aberration of Civil Service regulation per above-mentioned subject states that the 6-month probationary period is for "calendar months", whereas the clause of "calendar months" is not part of the Civil Service Regulation 14.01 of the City of Philadelphia.

This regulation can be compared to that of Pennsylvania State's Civil Service Regulation, which clearly specified that its 6-month probationary period is for "180 calendar days."

As a matter of fact, the performance evaluation obtained on 4/17/18 (effective 5/1/18) clearly states that it is for 5th month; meaning that the attempt to reject me on 6/6/18, and the subsequent illegal removal from office @12:45pm on that day is outside 6month probationary period, and also

violates Philadelphia's Civil Service Regulation 14.0413 that states that
rejection cannot be made effective after the last day of probational
period.

In the light of the above, this is an additional proof that I have
successfully completed probationary period for the position of an
Accounting Supervisor in the City of Philadelphia.

Other proofs previously mentioned are that the rejection was based on an
illegal performance evaluation dated 5/23/18 (i.e. no evaluation can be
issued within 90-days of the last effective date), the aforementioned
illegal evaluation and rejection process are discriminatory by virtue of
inadequate training for the job (i.e. barely 2weeks of "skeletal" pieces of
information from Stephanie Gaines, a level-13 supervisor that was paid
out-of-class on level-17 to train me [level 20 ], but Stephanie indicated
all along that she does not want me to get the job that she has been acting
at level-17, and I had to stay late on unpaid hours to put puzzles of her
"skeletal" pieces of information together. And when should found that I am
getting it together, she quit training me on 1/8/18, and continued making
the workplace hostile for me (she would start problem in my unit and then
report my unit and I to my superiors, and even in an email she mentioned
that she would watch me "crash and burn." And the manager, Noreen Skirkie
did nothing ever since to provide structured training, and very little to
curb the hostility from Stephanie towards me. But I continued to stay late
to learn more on my own, as I was basically left to ask questions whenever
I get stuck, even mostly from same enployees that I was supervising. And
the fact that the manager, Noreen Skirkie was not treating me equally like
other employees, especially those of the same race as hers (racism).

Working under workplace hostility and discriminatory environment is never
conducive to any employee, but I remained ever professional in all this.
Thus, rejecting me on probation for a job I sacrificed so much for in
getting the job done, and
Even starting the job @peak of tax season in a new unit that is totally
different and complex in work process from all other units I've worked for
in over a decade in the City's civil service is quite enormous, let alone
lack of structured training, and even working in such a hostile and
discriminatory environment.

Also, the purported rejection was not served in person or via registered
mail while on probation. It was handed to my union representative (Ms.
Cheryl Grandy), who noted a correction that need be made, in which the HR
representative (Kia Miller) agreed. However, Kia chose to humiliate me by
escorting me out of office @12:45pm, even before the rejection was
corrected (via email - still not served in-line with the CSR), and also
before the effective time of the purported rejection (i.e. end of the day).
Even the purportedly corrected rejection notice is with the same
signature-page as the one being corrected. Meaning, by this, the
signatories were not officially notified of the corection, as having their
signatures on the corrected notice would at least show some level of
sanity/sanctity on the attempted rejection process. And not notifying
getting signatures officially on the correction violates civil service
regulation 14.041 (Rejection procedure). And it is as such, an apparent
forgery of signatures in a fudged process. And the fact that Manager
Noreen, was there when the need for correction was noted by my union rep,
and agreed to be corrected by the HR rep there present, but was neither
corrected, nor served in-line with the CSR.

Even at a meeting with Deputy Commissioner Delores Davis, Kia Miller was
taking sides by speaking for both Noreen and Stephanie, as to how the
former might not be discriminating against me (stating that Noreen spoke to
an employee that Noreen herself already admitted on 5/30/18 to not speaking
to him on similar issues she's rejecting me for), and also that the latter
meant well by stating that she would watch me "crash and burn." This is an
apparent conspiracy/plot/ploy to cover up lots of things, especially since
Kia herself is involved illegally in this mess.

Revenue department is racially segregated in terms of superiors @
Accounting Control where served aforementioned probation (mostly Caucasian
superiors), and that of WRB (Water Revenue Bureau - from where I was
promoted from is mostly black superiors). I believe the aim is to push me
down as a black person, in order to avoid my competition (this was
mentioned by one of my employees sometimes ago that the superiors would not
allow me to stay competitive with Lynda Letto), as I came first in the
exam, and the fact that there's a rule of two (i.e. veteran's preference

that mandates selection of a veteran like me, when two candidates are interviewed, and the other candidate is not a veteran). Working in this unit has exposed my level of intellect, and to them, I am a threat to the illegal institution of racial segregation @Revenue Dept. Meaning, they would rather have a black person act in the capacity of an Accounting Supervisor, to ensure that Lynda Letto and others alike do not have such competition to move up the ladder @career advancement. If you're not an Accounting Supervisor, you cannot take exam for the next position of Accounting Transactions Supervisor. And that's why I was left in the lurch with lack of structured training, as a premeditated/calculated plot to ensure that I fail the probation, and when that was not working, they went for an illegal evaluation and rejection.

Should I be punished for lack of adequate training, for being a military veteran, for being brilliant, or for being professional amdist a hostile and discriminatory workplace/environment?

Please I need justice.

Thank you.

On Thu, Jul 19, 2018, 6:48 AM SAM ARAOYE <afroxylin7@gmail.com> wrote:

> Good Morning;
> The following is additional details per above-mentioned subject; please
> process this along with PHRC.
> The first rejection was not personally served to me while on probation,
> and none sent by registered mail during the probationary period.
> Per CSR, performance evaluations must be at least 90days apart from the
> previous effective date; I received an evaluation on 4/17/18 (effective
> date 5/1/18).
>
> As against CSR, 5/23/18 evaluation on which the purported rejection was
> based, was not even mentioned on neither of the notices, and I believe both
> Revenue-Commissioner and OHR Director were not informed about evaluation
> dated 5/23/18 (never mentioned in both notices).
>
> Even the correction made after signatories was not communicated to
> Revenue-Commissioner and OHR Director, as the signatures appended are
> exactly the same on the corrected rejection that was never even served per
> CSR. And I was escorted from office before corretion was made, and even
> before the effective time stated on the erroneous rejection.
> 1.) That Noreen deceptively scheduled 12pm meeting on 6/6/18 for 5th month
> evaluation, in which attendees were supposed to her and myself. But on
> sighting me @11:59am, she said we had to see Kia @Revenue HR. The first
> rejection notice has an error to be corrected by Revenue HR, but I was
> escorted from office, even before the effective time stated on the
> erroneous rejection, and also before such was corrected. And I believe
> Revenue Commissioner and OHR Director are not aware of the correction as
> they should; signatures on both rejection notices are exactly the same (by
> forensics analysis).
>
> Corrected rejection sent via email is not in line with the Civil Service
> Regulations (CSR), which states that rejection should either be served
> personally to the employee being rejected, or via registered mail to the
> employee.
>
> As against CSR, 5/23/18 evaluation on which the purported rejection was
> based, was not even mentioned on neither of the notices.
>
> Per CSR, performance evaluations must be at least 90days apart from the
> previous effective date; I received an evaluation on 4/17/18 (effective
> date 5/1/18).
>
> As against CSR, 5/23/18 evaluation on which the purported rejection was
> based, was not even mentioned on neither of the notices, and I believe both
> Revenue-Commissioner and OHR Director were not informed about evaluation
> dated 5/23/18 (never mentioned in both notices).
>
> Even the correction made after signatories was not communicated to
> Revenue-Commissioner and OHR Director, as the signatures appended are
> exactly the same on the corrected rejection that was never even served per
> CSR. And I was escorted from office before corretion was made, and even
> before the effective time stated on the erroneous rejection.
>

> 
> 
> 
> *From:* samuel araoye
> *Sent:* Friday, June 29, 2018 12:20 PM
> *To:* Noreen Skirkie; Glenn Harper
> *Cc:* Jessica Varela; Delores.Davis; Cheryl Grandy; Chance Toland-Wilson;
> Fred Wright; DGibson@DC47.org; Joseph Barr
> *Subject:* Rejection Not Served on Probation
> 
> Good afternoon;
> 
> Please let me know when you are available for a meeting
> per above-mentioned subject; alternatively, if the issue has been resolved,
> please let me know when to go back to my office as the Accounting
> Supervisor/Refund-Unit Manager.
> 
> Thanks a lot.
> 
> 
> *From:* samuel araoye
> *Sent:* Friday, June 29, 2018 12:09 PM
> *To:* Madeline Morrone <Madeline.Morrone@phila.gov>
> *Subject:* RE: 1/2 emails: Rejection Not Served (first one attached
> herein)
> 
> Got it; have a nice day, and enjoy your weekend.
> 
> *From:* Madeline Morrone
> *Sent:* Friday, June 29, 2018 12:07 PM
> *To:* samuel araoye <samuel.araoye@Phila.gov>
> *Subject:* RE: 1/2 emails: Rejection Not Served (first one attached
> herein)
> 
> That is correct.
> 
> *Madeline N. Morrone, **Administrative Assistant *
> *Office of Revenue Commissioner Frank Breslin*
> *Phone:* 215.686.6428⎪*Fax:* *215.686.6537
> *Email:* **madeline.morrone@phila.gov* <madeline.morrone@phila.gov>
> 
> [image: cid:image001.jpg@01D165B0.E2DCDDB0]
> 
> Like us on *Facebook *
> <https://na01.safelinks.protection.outlook.com/?url=https%3A%2F%2Fwww.facebook.com%2FPhilaRevenue%2F&data=02%
> 7C01%7Csamuel.araoye%40Phila.gov%7C5cdad28e5d614d7675c408d5ddda5836%7C2046864f68ea497daf34a6629a6cd700%7C0%7C0%
> 7C636658852205184701&sdata=876Ql2Rlegw8SydQ2ioNsMva9luLsrZMLkPVk1Qw8cE%3D&reserved=0>
> Follow us on *Twitter*
> <https://na01.safelinks.protection.outlook.com/?url=https%3A%2F%2Ftwitter.com%2FPhilaRevenue&data=02%7C01%
> 7Csamuel.araoye%40Phila.gov%7C5cdad28e5d614d7675c408d5ddda5836%7C2046864f68ea497daf34a6629a6cd700%7C0%7C0%
> 7C636658852205184701&sdata=neP6ud25JczeAmkMKvS8ES55fNeP6TWD%2BQdupAz%2FYGs%3D&reserved=0>
> 
> *Disclaimer*: This e-mail may contain confidential and/or privileged
> information. If you are not the intended recipient, please notify the
> sender and delete this e-mail immediately. Any unauthorized copying,
> disclosure or distribution of material in this e-mail is strictly forbidden.
> 
> *From:* samuel araoye
> *Sent:* Friday, June 29, 2018 12:04 PM
> *To:* Madeline Morrone <Madeline.Morrone@phila.gov>
> *Subject:* RE: 1/2 emails: Rejection Not Served (first one attached
> herein)
> 
> Thanks again Ms. Morrone;
> 
> I understand this to mean this issue must be handled by the Revenue
> HR-Manager Glenn Harper and Manager Noreen Skirkie.
> 
> Please confirm.
> 
> Thanks a lot.
> 
> 
> *From:* Madeline Morrone

> *Sent:* Friday, June 29, 2018 11:55 AM
> *To:* samuel araoye <samuel.araoye@Phila.gov>
> *Subject:* RE: 1/2 emails: Rejection Not Served (first one attached
> herein)
>
> Per our telephone conversation of this morning, I spoke with Commissioner
> Breslin regarding your request for a meeting. The commissioner advised that
> he will not be meeting with you. This is an issue that must be handled by
> in the Revenue Human Resources Department and with your Manager.
>
> Regards,
>
> Maddie Morrone
>
> *Madeline N. Morrone, **Administrative Assistant *
> *Office of Revenue Commissioner Frank Breslin*
> *Phone:* 215.686.6428│*Fax: *215.686.6537
> *Email: **madeline.morrone@phila.gov* <madeline.morrone@phila.gov>
>
> [image: cid:image001.jpg@01D165B0.E2DCDDB0]
>
> Like us on *Facebook *
> <https://na01.safelinks.protection.outlook.com/?url=https%3A%2F%2Fwww.facebook.com%2FPhilaRevenue%2F&data=02%
7C01%7Csamuel.araoye%40Phila.gov%7Ce13d7146ff32426c4c3a08d5ddd8a2de%7C2046864f68ea497daf34a6629a6cd700%7C0%7C0%
7C636658844873584627&sdata=9ChSXEEK%2FMWG%2FveucGhGisfUf8ZQtcfCsnmcr%2BXkAZI%3D&reserved=0>
> Follow us on *Twitter*
> <https://na01.safelinks.protection.outlook.com/?url=https%3A%2F%2Ftwitter.com%2FPhilaRevenue&data=02%7C01%
7Csamuel.araoye%40Phila.gov%7Ce13d7146ff32426c4c3a08d5ddd8a2de%7C2046864f68ea497daf34a6629a6cd700%7C0%7C0%
7C636658844873584627&sdata=x3wydJpBJos9mX9EUl5I8gwQ0xW%2FoVbs4mr3BHtcaek%3D&reserved=0>
>
> *Disclaimer*: This e-mail may contain confidential and/or privileged
> information. If you are not the intended recipient, please notify the
> sender and delete this e-mail immediately. Any unauthorized copying,
> disclosure or distribution of material in this e-mail is strictly forbidden.
>
> *From:* samuel araoye
> *Sent:* Wednesday, June 27, 2018 9:34 AM
> *To:* Madeline Morrone <Madeline.Morrone@phila.gov>; Pedro Rodriguez <
> Pedro.Rodriguez@phila.gov>
> *Subject:* 1/2 emails: Rejection Not Served (first one attached herein)
>
> Good morning;
> Per above-mentioned subject, the first rejection was not personally served
> to me while on probation, and none sent by registered mail during the
> probationary period.
>
> 1.) That Noreen deceptively scheduled 12pm meeting on 6/6/18 for 5th month
> evaluation, in which attendees were supposed to her and myself. But on
> sighting me @11:59am, she said we had to see Kia @Revenue HR. The first
> rejection notice has an error to be corrected by Revenue HR, but I was
> escorted from office, even before the effective time stated on the
> erroneous rejection, and also before such was corrected. And I believe
> Revenue Commissioner and OHR Director are not aware of the correction as
> they should; signatories on both rejection notices are exactly the same (by
> forensics analysis).
>
> Corrected rejection sent via email is not in line with the CSR.
>
>
>
>
>
> As against CSR, 5/23/18 evaluation on which the purported rejection was
> based, was not even mentioned on neither of the notices.
>
>

On Jul 19, 2018 6:48 AM, "SAM ARAOYE" <afroxylin7@gmail.com> wrote:

Good Morning;
The following is additional details per above-mentioned subject; please
process this along with PHRC.
The first rejection was not personally served to me while on probation, and
none sent by registered mail during the probationary period.
Per CSR, performance evaluations must be at least 90days apart from the

previous effective date; I received an evaluation on 4/17/18 (effective date 5/1/18).

As against CSR, 5/23/18 evaluation on which the purported rejection was based, was not even mentioned on neither of the notices, and I believe both Revenue-Commissioner and OHR Director were not informed about evaluation dated 5/23/18 (never mentioned in both notices).

Even the correction made after signatories was not communicated to Revenue-Commissioner and OHR Director, as the signatures appended are exactly the same on the corrected rejection that was never even served per CSR. And I was escorted from office before correction was made, and even before the effective time stated on the erroneous rejection.
1.) That Noreen deceptively scheduled 12pm meeting on 6/6/18 for 5th month evaluation, in which attendees were supposed to her and myself. But on sighting me @11:59am, she said we had to see Kia @Revenue HR. The first rejection notice has an error to be corrected by Revenue HR, but I was escorted from office, even before the effective time stated on the erroneous rejection, and also before such was corrected. And I believe Revenue Commissioner and OHR Director are not aware of the correction as they should; signatures on both rejection notices are exactly the same (by forensics analysis).

Corrected rejection sent via email is not in line with the Civil Service Regulations (CSR), which states that rejection should either be served personally to the employee being rejected, or via registered mail to the employee.

As against CSR, 5/23/18 evaluation on which the purported rejection was based, was not even mentioned on neither of the notices.

Per CSR, performance evaluations must be at least 90days apart from the previous effective date; I received an evaluation on 4/17/18 (effective date 5/1/18).

As against CSR, 5/23/18 evaluation on which the purported rejection was based, was not even mentioned on neither of the notices, and I believe both Revenue-Commissioner and OHR Director were not informed about evaluation dated 5/23/18 (never mentioned in both notices).

Even the correction made after signatories was not communicated to Revenue-Commissioner and OHR Director, as the signatures appended are exactly the same on the corrected rejection that was never even served per CSR. And I was escorted from office before correstion was made, and even before the effective time stated on the erroneous rejection.

*From:* samuel araoye
*Sent:* Friday, June 29, 2018 12:20 PM
*To:* Noreen Skirkie; Glenn Harper
*Cc:* Jessica Varela; Delores.Davis; Cheryl Grandy; Chance Toland-Wilson; Fred Wright; DGibson@DC47.org; Joseph Barr
*Subject:* Rejection Not Served on Probation

Good afternoon;

Please let me know when you are available for a meeting per above-mentioned subject; alternatively, if the issue has been resolved, please let me know when to go back to my office as the Accounting Supervisor/Refund-Unit Manager.

Thanks a lot.

*From:* samuel araoye
*Sent:* Friday, June 29, 2018 12:09 PM
*To:* Madeline Morrone <Madeline.Morrone@phila.gov>
*Subject:* RE: 1/2 emails: Rejection Not Served (first one attached herein)

Got it; have a nice day, and enjoy your weekend.

*From:* Madeline Morrone

*Sent:* Friday, June 29, 2018 12:07 PM
*To:* samuel araoye <samuel.araoye@Phila.gov>
*Subject:* RE: 1/2 emails: Rejection Not Served (first one attached herein)

That is correct.

*Madeline N. Morrone, **Administrative Assistant *
*Office of Revenue Commissioner Frank Breslin*
*Phone:* 215.686.6428|*Fax: *215.686.6537
*Email: **madeline.morrone@phila.gov* < madeline.morrone@phila.gov>

[image: cid:image001.jpg@01D165B0.E2DCDDB0]

Like us on *Facebook *
<https://na01.safelinks.protection.outlook.com/?url=https%3A%2F%2Fwww.facebook.com%2FPhilaRevenue%2F&data=02%
7C01%7Csamuel.araoye%40Phila.gov%7C5cdad28e5d614d7675c408d5ddda5836%7C2046864f68ea497daf34a6629a6cd700%7C0%7C0%
7C636658852205184701&sdata=876Ql2Rlegw8SydQ2ioNsMva9IuLsrZMLkPVk1Qw8cE%3D&reserved=0>
Follow us on *Twitter*
<https://na01.safelinks.protection.outlook.com/?url=https%3A%2F%2Ftwitter.com%2FPhilaRevenue&data=02%7C01%
7Csamuel.araoye%40Phila.gov%7C5cdad28e5d614d7675c408d5ddda5836%7C2046864f68ea497daf34a6629a6cd700%7C0%7C0%
7C636658852205184701&sdata=neP6ud25JczeAmkMKvS8ES55fNeP6TWD%2BQdupAz%2FYGs%3D&reserved=0>

*Disclaimer*: This e-mail may contain confidential and/or privileged
information. If you are not the intended recipient, please notify the
sender and delete this e-mail immediately. Any unauthorized copying,
disclosure or distribution of material in this e-mail is strictly forbidden.

*From:* samuel araoye
*Sent:* Friday, June 29, 2018 12:04 PM
*To:* Madeline Morrone <Madeline.Morrone@phila.gov>
*Subject:* RE: 1/2 emails: Rejection Not Served (first one attached herein)

Thanks again Ms. Morrone;

I understand this to mean this issue must be handled by the Revenue
HR-Manager Glenn Harper and Manager Noreen Skirkie.

Please confirm.

Thanks a lot.


*From:* Madeline Morrone
*Sent:* Friday, June 29, 2018 11:55 AM
*To:* samuel araoye <samuel.araoye@Phila.gov>
*Subject:* RE: 1/2 emails: Rejection Not Served (first one attached herein)

Per our telephone conversation of this morning, I spoke with Commissioner
Breslin regarding your request for a meeting. The commissioner advised that
he will not be meeting with you. This is an issue that must be handled by
in the Revenue Human Resources Department and with your Manager.

Regards,

Maddie Morrone

*Madeline N. Morrone, **Administrative Assistant *
*Office of Revenue Commissioner Frank Breslin*
*Phone:* 215.686.6428|*Fax: *215.686.6537
*Email: **madeline.morrone@phila.gov* < madeline.morrone@phila.gov>

[image: cid:image001.jpg@01D165B0.E2DCDDB0]

Like us on *Facebook *
<https://na01.safelinks.protection.outlook.com/?url=https%3A%2F%2Fwww.facebook.com%2FPhilaRevenue%2F&data=02%
7C01%7Csamuel.araoye%40Phila.gov%7Ce13d7146ff32426c4c3a08d5ddd8a2de%7C2046864f68ea497daf34a6629a6cd700%7C0%7C0%
7C636658844873584627&sdata=9ChSXEEK%2FMWG%2FveucGhGisfUf8ZQtcfCsnmcr%2BXkAZl%3D&reserved=0>
Follow us on *Twitter*
<https://na01.safelinks.protection.outlook.com/?url=https%3A%2F%2Ftwitter.com%2FPhilaRevenue&data=02%7C01%
7Csamuel.araoye%40Phila.gov%7Ce13d7146ff32426c4c3a08d5ddd8a2de%7C2046864f68ea497daf34a6629a6cd700%7C0%7C0%
7C636658844873584627&sdata=x3wydJpBJos9mX9EUl5I8gwQ0xW%2FoVbs4mr3BHtcaek%3D&reserved=0>

*Disclaimer*: This e-mail may contain confidential and/or privileged
information. If you are not the intended recipient, please notify the
sender and delete this e-mail immediately. Any unauthorized copying,

disclosure or distribution of material in this e-mail is strictly forbidden.

*From:* samuel araoye
*Sent:* Wednesday, June 27, 2018 9:34 AM
*To:* Madeline Morrone <Madeline.Morrone@phila.gov>; Pedro Rodriguez < Pedro.Rodriguez@phila.gov>
*Subject:* 1/2 emails: Rejection Not Served (first one attached herein)

Good morning;
Per above-mentioned subject, the first rejection was not personally served to me while on probation, and none sent by registered mail during the probationary period.

1.) That Noreen deceptively scheduled 12pm meeting on 6/6/18 for 5th month evaluation, in which attendees were supposed to her and myself. But on sighting me @11:59am, she said we had to see Kia @Revenue HR. The first rejection notice has an error to be corrected by Revenue HR, but I was escorted from office, even before the effective time stated on the erroneous rejection, and also before such was corrected. And I believe Revenue Commissioner and OHR Director are not aware of the correction as they should; signatories on both rejection notices are exactly the same (by forensics analysis).

Corrected rejection sent via email is not in line with the CSR.

As against CSR, 5/23/18 evaluation on which the purported rejection was based, was not even mentioned on neither of the notices.

=================== application File Attachment ===================
5th month dated 4-17-18 Performance Evaluation.pdf, 67231 bytes, Added to incident

=================== application File Attachment ===================
5th-month dated 5-23-18 Performance Evaluation.pdf, 113975 bytes, Added to incident

=================== application File Attachment ===================
DeceptiveMeeting&IllegalRejection.pdf, 201703 bytes, Added to incident

=================== application File Attachment ===================
S. Araoye - RDP@Probation.pdf, 819532 bytes, Added to incident

=================== image File Attachment ===================
20180725_003026.gif, 256303 bytes, Added to incident

=================== image File Attachment ===================
20180725_003747.gif, 730203 bytes, Added to incident

**Question Reference #180725-000006**

**Escalation Level:** 24 jeopardy
**Product Level 1:** Intake And Charge Filing
**Date Created:** 07/25/2018 01:45 AM
**Last Updated:** 08/29/2018 02:12 PM
**Status:** Closed
**Employer Zip Code:**

## COMPLAINT INFORMATION

Please see below for information to include in your complaint.  Once completed, please submit to Kia J. Miller's attention in Human Resources.

Complainant Name: Samuel O. Araoye

Civil Service Title: Accounting Supervisor

Section & Telephone #: Refund Unit, 6-2051

Date of Complaint: 5-29-18

Name & Title of alleged employee: Stephanie Gaines, Agency-Receivable Supervisor

Date and location of incident(s): 12/18/17 thru  Refund Unit – MSB Concourse.

Describe in **detail** the specific violation: harassment, threats, and creating hostile work environment.

Name and contact information of witnesses (if any): Noreen Skirkie, Cheryl Grandy, Deborah Rone

Evidence (i.e. letters, email - please include with statement) – Emails attached.

If any, action taken to stop the behavior: asking the employee to stop the harassment because I am just doing my job according to City regulations, being positive and acting in professional manners regardless of the hostile environment being created by the employee. She was acting as the supervisor of my unit before I took over, and that has been an issue to her. She makes false accusations to my superiors about me and my unit; all in attempts to ensure that I fail probation. She would be the one making up trouble in unit (especially by engaging my staff members in non-work related conversations), and would be the same one reporting the trouble to that my unit is not working, and that we were not taking calls. Even when was being paid out-of-class to train me about operations of the unit, she only did it in skeletal way as an attempt to ensure I do not comprehend the principles, and I was left with options to figure things out on my own, as she also quit training me within two weeks of my assumption of duty at the Refund Unit. Even my manager is new to the unit, and it was very rough navigating through operations, as I had to stay late on my personal time, even many days without actually going for lunch (even though I put down lunch hour on timesheet because I thought it is a requirement). Coming to the unit as a new supervisor during peak periods of tax season is complex enough, let alone the intricacies of operations, and having to work in a hostile environment is definitely not good for the taxpayers, the department, the unit, and myself.

How you would like to see the situation resolved: I can work with and around anyone regardless of differences, but threats to life is a serious criminal act. I may have to seek legal means to address this issue.

Additional information or comments: the employee's threats that I am just made aware of recently has been more traumatizing than all other things that have been happening prior to that. Even though I went through a lot over the first 4 months of the probation, Ms. Stephanie's recent threats has been troubling my mind and even giving me nightmares on a daily basis. Would she really hurt me and my family? This, and many questions has been on my mind since I found out, and regardless, I still do my best to carry out my duties in a professional manner.

Was the behavior reported to chain of command and how did chain of command respond?

Initially, I issued a verbal warning when I saw her attitude (as also witnessed by my superiors) is an attempt to jeopardize my work and that of my unit. But I was told to rescind it because it seems too harsh, and I did. At another instance, I reported to my superiors, and I was basically told not to feel paranoid about the issue. And since then, I have allowed my superiors to handle issues regarding her behaviors. Even regarding her threats that she would watch me "crash and burn", I was only copied in the email, and I do not know how my superiors are handling it. A superior even told me that a supervisor was previously "let go" for being paranoid. And knowing that I have up to a year to report it, I was just trying to focus on my job, especially to take care of taxpayers during peak periods of tax season, and also being on probationary period. I intended to make formal report after probation.

Thank you.

**samuel araoye**

| | |
|---|---|
| **From:** | samuel araoye |
| **Sent:** | Friday, May 18, 2018 11:19 AM |
| **To:** | Nicole Galvin; Deborah Rhone |
| **Cc:** | Noreen Skirkie; Tom Wismer; Glenn Harper |
| **Subject:** | RE: Safety/Security Situation @ Hub of Hope/Sherwood Forest |

You are quite welcome Nicole; that is why we are here. #Safety1st

**From:** Nicole Galvin
**Sent:** Friday, May 18, 2018 11:06 AM
**To:** samuel araoye <samuel.araoye@Phila.gov>; Deborah Rhone <Deborah.Rhone@phila.gov>
**Cc:** Noreen Skirkie <Noreen.Skirkie@phila.gov>; Tom Wismer <Tom.Wismer@phila.gov>; Glenn Harper
<Glenn.Harper@phila.gov>
**Subject:** RE: Safety/Security Situation @ Hub of Hope/Sherwood Forest

Hi Sam;

Thank you so much for your prompt response; it is appreciated. I will follow up with you
regarding your request for E-time once I receive word.

Thank you for helping to make Revenue a safer place.

**From:** samuel araoye
**Sent:** Friday, May 18, 2018 11:04 AM
**To:** Nicole Galvin <Nicole.Galvin@phila.gov>; Deborah Rhone <Deborah.Rhone@phila.gov>
**Cc:** Noreen Skirkie <Noreen.Skirkie@phila.gov>; Tom Wismer <Tom.Wismer@phila.gov>; Glenn Harper
<Glenn.Harper@phila.gov>
**Subject:** RE: Safety/Security Situation @ Hub of Hope/Sherwood Forest

Hi Nicole;

- What were you doing here at 11:30 at night?
  - My evening overtime hours stop @ 10pm, but backlogs and administrative
    work could take me into extra hour or two.

- 6-6482 is my phone number which is with my contact information at the bottom of
  the flyer. The security number that is listed on the flyer is 24-7. It is attached for
  your review.
  - After checking my work-phone log, I actually called 6-3900 (which is
    obviously from the old flyer) - sorry about the mix-up

- Did the employee file a police report?
  - Ms. Rhone declined to file a police report, as she told officer

- Was she urinated on?

1

Also, last night around 11:30pm, I heard a loud female voice (crying for help) around the area next to Broad St (behind our glass windows @ Concourse), I called MSB Security @ 6-6482 as stated on Safety Matters flyer, but that went to voicemail. I reported this to the security officer on duty, and she told me that the front-desk phone# is 6-4953.

Additionally, Ms. Latonya said all entrances leading to our floor was left wide-open and unsecured this morning (around 7:30am). I believe cleaning crews and security officers on duty can ensure doors are well secured during and after shifts.

Your prompt action to these safety and security matters would be much appreciated.

Thanks a lot.

-------------------------------------------------------------------------------------------------------------------------------------

*Samuel O. Araoye, MBA*
Accounting Supervisor
City Of Philadelphia
Revenue Department @ Refund Unit
1401 JFK Blvd., MSB – CONCOURSE
PHILADELPHIA, PA 19102
E-mail: samuel.araoye@phila.gov
**Tel. 215-686-2051**, Extension 6-2051, Intercom 15518
Fax. 215-686-6228

Unit-Email: refund.unit@phila.gov

Website: https://beta.phila.gov/services/payments-assistance-taxes/refunds/general-refund-information/



CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE

Like us on **Facebook**    Follow us on **Twitter**

This email may contain confidential and/or privileged information.  If you are not the intended recipient, please notify the sender and delete this e-mail immediately.  Any unauthorized copying, disclosure or distribution of material in this e-mail is strictly forbidden.

**samuel araoye**

| | |
|---|---|
| **From:** | samuel araoye |
| **Sent:** | Friday, May 18, 2018 11:19 AM |
| **To:** | Nicole Galvin; Deborah Rhone |
| **Cc:** | Noreen Skirkie; Tom Wismer; Glenn Harper |
| **Subject:** | RE: Safety/Security Situation @ Hub of Hope/Sherwood Forest |

You are quite welcome Nicole; that is why we are here. #Safety1st

**From:** Nicole Galvin
**Sent:** Friday, May 18, 2018 11:06 AM
**To:** samuel araoye <samuel.araoye@Phila.gov>; Deborah Rhone <Deborah.Rhone@phila.gov>
**Cc:** Noreen Skirkie <Noreen.Skirkie@phila.gov>; Tom Wismer <Tom.Wismer@phila.gov>; Glenn Harper
<Glenn.Harper@phila.gov>
**Subject:** RE: Safety/Security Situation @ Hub of Hope/Sherwood Forest

Hi Sam;

Thank you so much for your prompt response; it is appreciated. I will follow up with you
regarding your request for E-time once I receive word.

Thank you for helping to make Revenue a safer place.

**From:** samuel araoye
**Sent:** Friday, May 18, 2018 11:04 AM
**To:** Nicole Galvin <Nicole.Galvin@phila.gov>; Deborah Rhone <Deborah.Rhone@phila.gov>
**Cc:** Noreen Skirkie <Noreen.Skirkie@phila.gov>; Tom Wismer <Tom.Wismer@phila.gov>; Glenn Harper
<Glenn.Harper@phila.gov>
**Subject:** RE: Safety/Security Situation @ Hub of Hope/Sherwood Forest

Hi Nicole;

- What were you doing here at 11:30 at night?
  - My evening overtime hours stop @ 10pm, but backlogs and administrative
    work could take me into extra hour or two.

- 6-6482 is my phone number which is with my contact information at the bottom of
  the flyer. The security number that is listed on the flyer is 24-7. It is attached for
  your review.
  - After checking my work-phone log, I actually called 6-3900 (which is
    obviously from the old flyer) - sorry about the mix-up

- Did the employee file a police report?
  - Ms. Rhone declined to file a police report, as she told officer

- Was she urinated on?

Also, last night around 11:30pm, I heard a loud female voice (crying for help) around the area next to Broad St (behind our glass windows @ Concourse), I called MSB Security @ 6-6482 as stated on Safety Matters flyer, but that went to voicemail. I reported this to the security officer on duty, and she told me that the front-desk phone# is 6-4953.

Additionally, Ms. Latonya said all entrances leading to our floor was left wide-open and unsecured this morning (around 7:30am). I believe cleaning crews and security officers on duty can ensure doors are well secured during and after shifts.

Your prompt action to these safety and security matters would be much appreciated.

Thanks a lot.

----------------------------------------------------------------------------------------------------------------------------

*Samuel O. Araoye, MBA*

Accounting Supervisor
City Of Philadelphia
Revenue Department @ Refund Unit
1401 JFK Blvd., MSB – CONCOURSE
PHILADELPHIA, PA 19102
E-mail: samuel.araoye@phila.gov
**Tel. 215-686-2051**, Extension 6-2051, Intercom 15518
Fax. 215-686-6228

Unit-Email: refund.unit@phila.gov

Website: https://beta.phila.gov/services/payments-assistance-taxes/refunds/general-refund-information/



CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE

Like us on **Facebook**    Follow us on **Twitter**

This email may contain confidential and/or privileged information.  If you are not the intended recipient, please notify the sender and delete this e-mail immediately.  Any unauthorized copying, disclosure or distribution of material in this e-mail is strictly forbidden.



**CITY OF PHILADELPHIA**

CIVIL SERVICE COMMISSION
1640 MUNICIPAL SERVICES BUILDING
1401 JOHN F. KENNEDY BOULEVARD
PHILADELPHIA, PA  19102-1675

(215) 686-2320
Fax (215) 686-2374

**Commission**
DORIS A. SMITH, Chairperson
LEONARD V. CID, Commissioner
MICHAEL MC ANALLY, Commissioner

February 6, 2019

Samuel Araoye
4842 Summerdale Avenue
Philadelphia, PA  19124

Dear Mr. Araoye:

This will acknowledge receipt of your correspondence dated 1/24/2019, regarding "irregularities, undue process, and falsification of employee record per hiring process at Revenue Department (name removed from departmental list via undue and manipulated process)."

We have reviewed your correspondence and note that you raise issues regarding your rejection during probation in June 2018, your removal from certification for a position in the Revenue Department, as well as various complaints based on allegations of discrimination.

First, pursuant to Civil Service Regulation 14.042, an employee who is rejected during the probationary period does not have the right to appeal to the Civil Service Commission against such action.  Further, the Commission addressed that issue in detail in our previous correspondence to you, dated 7/18/2018.

In regard to removal of your name from an eligible list, it appears that your name was not removed from the list overall, but was removed only from *certification* to the Revenue Department.  Your name remains on the eligible list for possible certification to other departments.  Civil Service Regulation 11.08, Objection to and Substitution of Eligibles, allows an appointing authority to request removal of an eligible candidate from a certification for any cause contained in a subsection of Civil Service Regulation 10.09.  If such request is approved by the Director of Human Resources, as happened in your case, the name of the eligible is stricken from the *certification* and the candidate has the same right to request restoration to the certification as defined in Regulation 10.10 – Restoration of Names to Lists.  Your request regarding your certification to the Revenue Department must therefore be made to the Director of Human Resources.

February 6, 2019
Page Two
Samuel Araoye

In regard to your discrimination complaints, we note that this Commission is not empowered to investigate such complaints. Moreover, documentation you submitted included the results of an investigation conducted by the Office of Labor Relations who found that your allegations of discrimination based on race and retaliation were not sustained by corroborative evidence.

Finally, we are unable to determine any basis for your allegation of falsification of records.

In conclusion, the Commission is without jurisdiction regarding your rejection during probation or restoration of your name to certification from an eligible list, nor is there any provision in the Civil Service Regulations or the Home Rules Charter which would allow the Civil Service Commission to intervene in such matters. In addition, the Commission does not have authority to investigate discrimination complaints and we note that matter was previously addressed by an agency with such jurisdiction. Therefore, the Commission can take no action regarding the issues you have raised.

Very truly yours,

Doris A. Smith

Leonard V. Cid

Michael McAnally
Commissioners

Samuel O. Araoye

Pay-Roll# 245661

MSB 380

January 24, 2019

The Civil Service Commision

City of Philadelphia

Municipal Services Building
1401 J.F.K. Blvd.
16th Floor
Philadelphia, PA 19102

**RECEIVED**

JAN 2 4 2019

CIVIL SERVICE
COMMISSION

<u>Irregularities, Undue Process, and Falsification of Employee Record per Hiring Process at Revenue Department (My name removed from Departmental List via undue and manipulated process).</u>

Per probationary period dated 12/18/17 thru 6/6/18, this is notify your honorable commission that my 5th-month performance evaluation has been falsified to 2nd month for evaluation's type of report given to me on 4/17/18 (as sent by Ms. Princess with email attachment dated 12/5/18). That is the reason I requested to take a look at my employee folder; then I found another falsification of the date of rejection with initials GRH as shown below and as attached herein.

it is indeed discriminatory not to train an employee, especially in a unit that is new to the employee. Meaning it is an indeed an unequal employment opportunity to have an employee promoted into a new unit, while another is promoted in situ (the same unit the employee has been for long), and still expect. And in my case, I even struggled thru, including sacrificing unpaid work hours to put puzzles together (since it was apparent that the person assigned to train me did not want me to succeed, as she was giving skeletal information, and when she saw that I was getting it together, she quit training me within 14 working days of my arrival at the unit). Let alone the hostility and threats that the employee took me thru. No employee should be put in these circumstances anywhere in the world.

I explained all this to Ms. Princess in my response, and I asked that I should be given an opportunity per the new exam in the same unit that I have been for almost 5yrs, like any employee in the city would rather choose to stay in situ, since the City does not have structured training program. I would have taken this choice, if I had known that the situation would be like that at refund unit, and if there was a position available as at that time. But I was never given that option to choose between my unit and a new unit.

I stated that this is indeed racial because I believe City of Philadelphia has not put someone that is originally from America in this kind of situation (nerve wrecking and emotional distress).

Your immediate intervention would be appreciated.

Sincerely,

Samuel O. Araoye   1/24/19



## City of Philadelphia - Notice of Results -- Accounting Supervisor (2A07-20170814-PR-00)

1 message

<Phila.OHR@phila.gov>                                                    Mon, Dec 4, 2017 at 1:31 PM
To: afroxylin7@gmail.com

SAMUEL ARAOYE
4842 Summerdale Avenue
PHILADELPHIA, PA 19124

Dear SAMUEL ARAOYE:

The Office of Human Resources has reviewed the scoring for the **Accounting Supervisor, (2A07-20170814-PR-00)** examination and
determined that a revision is necessary.

As a result, your score and/or rank may have changed and will be listed below.

Your new score is **81.36944999999999** and your new rank on the eligible list is currently   **1**.

Cornell Q. Weaver
City Of Philadelphia
Office of Human Resources
1401 JFK Blvd.- Suite 1530
cornell.weaver@phila.gov
Office: 215-686-2387
Fax: 215-686-0861



## City of Philadelphia - Notice of Results -- Accounting Supervisor (2A07-20180827-PR-00)

1 message

---

<Phila.OHR@phila.gov>                                                                   Tue, Nov 6, 2018 at 11:20 AM
To: afroxylin7@gmail.com

SAMUEL ARAOYE
4842 Summerdale Avenue
PHILADELPHIA, PA 19124

Dear SAMUEL ARAOYE:

Congratulations!  You passed the examination for the position of **Accounting Supervisor, (2A07-20180827-PR-00)**.

The Published List of Candidates has been established.  Your score is **87.13823000000001** and your rank on the eligible list is currently **1**.  Please be advised that your rank may change as a result of appeals, removal of candidates from the eligible list, or other actions that occur after the establishment of the original eligible list.

The Eligible List for this examination will be established when the first candidates are certified and scheduled for interviews.  At that time, the maximum two year duration of the eligible list will begin.

**Candidates will have 30 days from the date results were sent to review their test and file a written appeal.  Test review is held on Tuesdays, Wednesdays and Thursdays and is available by appointment only.  Please call (215) 686-0880 if you wish to schedule a test review.**

When we have sufficient vacancies to reach your rank on the eligible list, you will be contacted by a human resources representative to schedule an appointment for a job interview.  If you inform the representative that you choose not to interview, you will be considered to have declined the position.  Please be aware that declining an interview or position on three separate occasions or failing to respond to any invitation to be interviewed will result in your name being removed from the eligible list.

You have the option to make yourself unavailable for job opportunities in a specific department or departments, or for a period of time.  This must be done in writing, by printing and completing the Statement of Unavailability form (click hyperlink) and returning it to the address below.  Candidates may make no more than two (2) written statements of unavailability during the term of the eligible list.  Note that if you submit such statements you will NOT be contacted as job opportunities arise during the time period, or for the departments, specified in your statement.

Statements of Unavailability must be mailed to:

City of Philadelphia, Office of Human Resources
Certification Services
1401 JFK Boulevard, 15th Floor
Municipal Services Building
Philadelphia, PA 19102-1675

All future correspondence and notifications will be sent to the e-mail or postal address listed in the contact information (address, phone #, e-mail) of your account profile.  It is your responsibility to change your contact information and ensure it is correct.  Please be sure to update your PeopleAdmin account with any change of contact information.

Good luck with your career.