## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAMUEL O. ARAOYE | : |
| | : CIVIL ACTION |
| Plaintiff, | : No.: 2:19-cv-0719 |
| | : |
| v. | : |
| | : |
| CITY OF PHILADELPHIA. | : |
| | : |
| Defendant. | : |

## FIRST AMENDED COMPLAINT

### I.   INTRODUCTION

Plaintiff, Samuel O. Araoye, (hereinafter "Plaintiff"), hereby files this Amended Complaint in his action against Defendant City of Philadelphia (hereinafter "Defendant"). Plaintiff is alleging that he was subject to disparate treatment, retaliation, and a hostile and unsafe working environment based on race, ethnicity and color in violation of Title VII of the Civil Rights Act of 1964.

### II.   STATEMENT OF JURISDICTION

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331 and 1337, as Plaintiff asserts claims of discrimination based on disparate treatment and retaliation, arising under Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000e et *seq*.

2. The employment practices alleged herein to be unlawful were committed in the Eastern District of Pennsylvania. Venue in this District Court is therefore invoked under 28 U.S.C. Section 1391.

3. Plaintiff has obtained the right to sue in the above referenced matter pursuant to the U.S. Equal Employment Commission Decision dated July 19, 2019. (*See* Exhibit "A").

## III.    PARTIES

4. Plaintiff is a resident of Springville, Pennsylvania.

5. Plaintiff is a member of a protected class. While Plaintiff is an American citizen, Plaintiff was born in Nigeria and is a Black man. Plaintiff is also a veteran of the American military.

6. Defendant, City of Philadelphia, is a Municipality organized under the laws of the State of the Commonwealth of Pennsylvania.

7. At all times hereto, Defendant employed managers, supervisors, agents and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Amended Complaint.

## IV.   FACTS

8. Plaintiff was hired by the City of Philadelphia as an accountant in its Water Revenue Bureau ("WRB") on March 3, 2014. At all times, Plaintiff's work performance was exemplary.

9. In 2017, Plaintiff took the Civil Service test for promotion to Accounting Supervisor and ranked #1 on the list.

10. On December 18, 2017 Plaintiff was promoted to the position of Accounting Supervisor in the Refund Unit and Agency-Receivable unit, both at Tax Revenue Bureau.

11. Plaintiff was initially placed in the position of Accounting Supervisor on a probationary basis.

12. According to City of Philadelphia Civil Service Regulation ("CSR") § 14.03, Plaintiff would be considered to have successfully completed his probationary period with his combined , provided that the appointing authority does not file a Performance Report with an over-all rating of Improvement Needed, Unacceptable or Unsatisfactory before the end of the aggregate period of six (6) months, which includes total overtime hours worked at Refund Unit.

13. Plaintiff's Manager, Noreen Skirkie assigned Clerical Supervisor Stephanie Gaines to train Plaintiff during his six-month probationary period.

14. For the following two (2) weeks, Ms. Gaines failed to provide Plaintiff with the required

training. Instead, Ms. Gaines refused to give Plaintiff the information that was necessary for him to perform his job and chastised Plaintiff for taking notes.

15. After Ms. Gaines quit providing training to Plaintiff, no other employee was assigned to train Plaintiff during his probationary period.

16. Ms. Gaines also frequently angrily harassed Plaintiff in front of others, on one occasion telling Plaintiff to "be a man."

17. Ms. Gaines did not treat Plaintiff's non-male, non-Nigerian, and non-Black coworkers in a similar manner.

18. Because of Ms. Gaines' failure to train, Plaintiff was forced to stay after hours, without pay, in order to meet his work obligations. After two (2) weeks, Ms. Gaines completely quit training Plaintiff.

19. According to City of Philadelphia Civil Service Regulation ("CSR") § 23.01, a Performance Report for probationary employees should be prepared and filed within ten days following the completion of the second and fifth months of the probationary period. And in the absence of an evaluation during the stipulated time per the CSR, an employee is deemed satisfactory.

20. In violation of these regulations, Plaintiff never received a Performance Evaluation after the second month of his probationary period.

21. Instead, on April 17, 2018 Skirkie issued Plaintiff a "Fifth Month" Performance Report that rated Plaintiff's overall performance as "superior" and which commended Plaintiff for his eagerness to learn all aspects of his job. As of April 17, 2018, aggregate of work done on regular and overtime has been well over 5 months of combined work done; meaning I have until May 18, 2018 to complete 6 months for the probation. And I was not rejected on probation 10 days after, I have indeed successfully completed the probationary period. Whereas, the defendant callously removed me from office in an apparent discriminatory and retaliatory treatments for reporting safety issues. And I mean, Skirkie wrote bad evaluation against on May 23, 2018, being few days after I reported unsafe workplace situations, in which the HR questioned the fact that I worked late. Since her training laxity may be exposed, she decided to get rid of me.

22. Plaintiff was questioned by a Human Resources representative. This representative asked Plaintiff why he was working so late. Plaintiff told the representative that he had to work late due to the heavy workload, especially during the peak of tax season, in which Wismer, the Director said he felt sorry that I was hired at the beginning of the peak of tax season. Despite the fact I requested overtime hours early enough, Wismer and Skirkie did not start approving overtime until several weeks after my request. And when that happened, we also have to get help from other units; and I mean, we can have as much as 7 employees from other units helping out during overtime hours. This clearly shows how enormous workloads are in the City's only Refund Unit. Meaning, I was supervising between 10 to 15 employees per day during regular and overtime hours, which is very unusual for any Supervisor or Manager at my level in the City of Philadelphia.

23. As of May 15, 2018, Plaintiff had completed more than seven months in total work hours (i.e. 8 hr is considered 1 day of work, and I have put in more than 7 months of work hours in that perspective). Under CSR, if no evaluation is given to Plaintiff within 10 days after completing probationary period, Plaintiff's performance would be considered to be satisfactory and he could not be rejected on probation.

24. On May 23, 2018 Skirkie issued Plaintiff a second "Fifth Month" Performance Report. Unlike the Fifth Month Performance Reported issued on April 17, 2018, this Performance Report rated Plaintiff's overall performance as "unacceptable." In this Performance Report, Skirkie indicated that she would not be recommending Plaintiff for a permanent position.

25. This issuance of two "Fifth Month" Performance Reports is in violation of CSR § 23.034, which states that Defendant may not issue a single employee two performance reports within a three-month period.

26. On June 6, 2018 Skirkie sent Plaintiff a memo asking him to attend a meeting so that they could discuss his Fifth Month Performance Report.

27. When Plaintiff arrived at the meeting, Skirkie instead handed Plaintiff a Rejection Notice indicating that Plaintiff had failed his probationary period and would not be receiving a permanent position as Accounting Supervisor. The Rejection Notice claimed that beginning in April 2018, Plaintiff exhibited issues with missing refund petitions due to his habit of keeping a cluttered cubicle. However, in his April 17, 2018 Performance Report, Skirkie had rated "superior" in the category the concerning keeping his work organized. The Rejection Notice also falsely characterized the April 17, 2018 Performance Report as being Plaintiff's "Two Month" evaluation.

28. During this meeting, Kia Miller handed Plaintiff's union representative, Ms. Cheryl Grandy, the Rejection Notice. Ms. Grandy noticed the error concerning the April 17, 2018 Performance Report, in which Plaintiff's rating has been reduced from superior to satisfactory. Ms. Miller promised to correct it. Later, after Plaintiff was removed from the office, Ms. Miller sent a corrected version of the Rejection Notice via email, which is still not corrected in entirety, as the mention of 2nd month evaluation per evaluation dated April 17, 2018 is absolutely false. There was never a 2nd month evaluation report issued to me, and the one dated, signed, and given on April 17, 2018 is the 5th month evaluation report. In essence, Revenue Department's HR presented rejection notice with falsehood regarding my performance rating per evaluation dated April 17, 2018 to the Revenue Department's Commissioner and the Central HR Director, and both signed it. And when Miller sent the purportedly corrected version via email, the signatures were forensically and exactly the same. Meaning, Miller was not truthful in exercising due process by at least presenting what she corrected to the executive signatories. Miller did show absolute nonchalant attitude for such defamation against myself and my career, and such that further buttress on unimaginable echelon discrimination and retaliation with impunity. Ms. Miller was the same HR representative that lodged complaint to regarding workplace hostility that was perpetrated by Ms. Gaines, and she did not even give any feedback whatsoever, until I

complained about such nonchalant attitude.

29. Ms. Miller thus served the Rejection Notice onto Plaintiff in a manner that violates CSR, which requires that the Rejection Notice be served personally to an employee, or that such notice be sent via registered mail to such employee.

30. Consequently, Plaintiff demoted to the position of an Accountant without any justifiable cause, other than the apparent discriminatory and retaliatory acts.

31. In December 2018 Plaintiff again took the Civil Service test for promotion to Accounting Supervisor and ranked #1 on the list. However, Plaintiff was never given the opportunity to interview for a position, the defendant claimed via an email to the plaintiff that the decision to deny him was made because he did not successfully complete the prior probationary period during his tenure as an Accounting Supervisor/Refund Unit Manager (i.e. 12/18/27 thru 6/6/18), and also asked the plaintiff to defend himself on the decision within few days, and the plaintiff responded as requested with the facts and figures, which the department still ignored and denied the plaintiff the opportunity to interview for the position that is actually open in his own unit, same unit he has acquired experience for at least 5 years, including making at least \$2Million USD in accounts receivable for the City of Philadelphia. The Department of Revenue also attached another copy of his April 17, 2018 Performance Report to the email. However, this copy of the April 17, 2018 Performance Report had been manipulated to read "2nd Month", instead of the "5th month" in the original evaluation report. This is a clear retaliation for earlier exercising of my rights by reporting the discriminatory and retaliatory rejection on probation on June 6, 2018, especially to the EEOC.

32. As a result of emotional distress and hypertension caused by the defendant's discriminatory and retaliatory treatments, Plaintiff resigned from the City of Philadelphia, withdrew my vested lifetime pension contributions, and moved out of Philadelphia.

## CLAIMS FOR RELIEF

### COUNT I

### (Race, Color, National Origin, and Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as Amended, 42 U.S.C. § 2000e *et seq*.)

33. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

34. Based on the foregoing, Plaintiff avers that Defendant violated Title VII's prohibition against discrimination based on race, color, national origin and gender by subjecting him to discrimination and by rejecting him during his probationary status.

35. As a result of Defendants' unlawful discrimination, Plaintiff has suffered damages as set forth herein.

## COUNT II

### (Race, Color, National Origin, and Gender Discrimination in Violation of the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.*)

36. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

37. Based on the foregoing, Plaintiff avers that Defendant violated PHRA's prohibition against discrimination based on race, color, national origin and gender by subjecting him to discrimination and by rejecting him during his probationary status.

38. As a result of Defendants' unlawful gender discrimination, Plaintiff has suffered damages as set forth herein.

## COUNT III
### (Race Discrimination in Violation of 42 U.S.C. § 1981)

39. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

40. Defendant's discrimination against Plaintiff is in violation of the rights of Plaintiff and the class afforded him by the Civil Rights Act 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991.

41. By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, of their contractual employment relationship with Defendant, in violation of 42 U.S.C. §1981.

42. As a result of defendant Defendant's discrimination in violation of Section 1981, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling him to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendant's actions, thereby entitling them to compensatory damages.

43. In its discriminatory actions as alleged above, Defendant has acted with malice or reckless indifference to the rights of the Plaintiff thereby entitling him to an award of punitive damages.

## Prayer for Relief

**WHEREFORE,** Plaintiff requests that the Court grant him the following relief against

Defendant:

(a) Compensatory damages;

(b) Punitive damages (where applicable);

(c) Liquidated damages (where applicable);

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the Title VII and the PHRA.

(j) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited to, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the statutory provisions sued hereunder.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

Respectfully submitted,

Samuel Araoye
*Pro Se* Plaintiff

Dated: February 10, 2020

## VERIFICATION

I, Samuel Araoye, hereby verify that I am the *Pro Se* Plaintiff in the within Amended Complaint and that the statements made in the foregoing Amended Complaint are true and correct to the best of my knowledge, information, and belief.

I understand that false statements are made to the penalties of 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

Samuel O. Araoye
*Pro Se* Plaintiff

Date: February 10, 2020

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SAMUEL O. ARAOYE | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | No.: 2:19-cv-0719 |
| | : | |
| v. | : | |
| | : | |
| NOREEN SKIRKE, et al. | : | |
| | : | |
| Defendants. | : | |

**ORDER**

**AND NOW,** this _____ day of _____, 2020 upon consideration

of Plaintiff's Motion for Leave to File an Amended Complaint, and all responses thereto, it is

ORDERED that the Motion is GRANTED. Plaintiff's Amended Complaint is included as part of

the record and will be considered by the Court.

BY THE COURT:

_____

, J.

SAMUEL O. ARADYE
10606 SR 3004
Springville, PA 18844

Clerk
Ref.
601 Ma
Philadelp

of Court

9 - 719 (Amendment)

rket St

ia, PA 19106

**PRESS FIR**

# PRIORITY
## ★ MAIL ★
# EXPRESS™

## OUR FASTEST SERVICE IN THE U.S.



**WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.**



EP13F July 2013   OD: 12.5 x 9.5



PS10001000006

This envelope is made from post-consumer waste. Please recycle - again.

**VISIT US AT USPS.COM**
ORDER FREE SUPPLIES ONLIN

WRITE FIRMLY WITH BALL POINT PEN ON HARD SURFACE TO MAKE ALL COPIES LEGIBLE.

**CUSTOMER USE ONLY**
FROM: (PLEASE PRINT)          PHONE (

SAMUEL AKI
10606 SR 3C
Spangville, PA

**PAYMENT BY ACCOUNT (if applicable)**

**DELIVERY OPTIONS (Customer Use Only)**
☐ **SIGNATURE REQUIRED** Note: The mailer must che
Requires the addressee's signature; OR 2) Purchases additiona
Purchases Return Receipt service. If the box is not checked, the
mail receptacle or other secure location without attempting to ob
**Delivery Options**
☐ No Saturday Delivery (delivered next business da
☐ Sunday/Holiday Delivery Required (additional fee
☐ 10:30 AM Delivery Required (additional fee, whe
"Refer to USPS.com® or local Post Office" for ava

**TO:** (PLEASE PRINT)          PHONE (

Clerk + Cou
US Court Hou
601 Market
ZIP + 4® (U.S. ADDRESSES ONLY)  Phile
1   9   1   0   6

■ For pickup or USPS Tracking™, visit USPS.
■ $100.00 insurance included.



UNITED STATES
POSTAL SERVICE ®

1007          19106

PHILADELPHIA, PA
19124
FEB 10, 20
AMOUNT
**$26.35**
R2305K141448-55

Y TO SEAL

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express™ shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP13F © U.S. Postal Service; July 2013; All rights reserved.



EM085246174US

EM085246174US



UNITED STATES
POSTAL SERVICE ®

**PRIORITY**
★ MAIL ★
**EXPRESS**™

"Signature Required" box If the mailer: 1)
nce; OR 3) Purchases COD service; OR 4)
Service will leave the item in the addressee's
addressee's signature on delivery.

e available")
able*)
y.

) 597 7254

SF phladelphia
(yais PA

r call 800-222-1811.

| ORIGIN (POSTAL SERVICE USE ONLY) | | | |
|---|---|---|---|
| ☐ 1-Day | ☐ 2-Day | ☐ Military | ☐ DPO |
| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage | |
| | | $ | |
| Date Accepted (MM/DD/YY) | Scheduled Delivery Time ☐ 10:30 AM ☐ 3:00 PM ☐ 12 NOON | Insurance Fee $ | COD Fee $ |
| Time Accepted ☐ AM ☐ PM | 10:30 AM Delivery Fee $ | Return Receipt Fee $ | Live Animal Transportation Fee $ |
| Special Handling/Fragile $ | Sunday/Holiday Premium Fee $ | Total Postage & Fees | |
| Weight ☐ Flat Rate lbs.    ozs. | Acceptance Employee Initials | $ | |

| DELIVERY (POSTAL SERVICE USE ONLY) | | |
|---|---|---|
| Delivery Attempt (MM/DD/YY) 2/11/20 | Time 1149 ☐ AM ☐ PM | Employee Signature |
| Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature |

LABEL 11-B, OCTOBER 2016     PSN 7690-02-000-9996     **3-ADDRESSEE COPY**






UNITED STATES
POSTAL SERVICE ®