IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAMUEL O. ARAOYE,<br>        Plaintiff, | CIVIL ACTION |
| v. | |
| CITY OF PHILADELPHIA,<br>        Defendant. | NO.  19-719 |

**MEMORANDUM OPINION**

Plaintiff Samuel Araoye, who is black, brings suit against Defendant City of Philadelphia claiming racial discrimination in the course of his employment by the City in violation of 42 U.S.C. § 1981.  Araoye and the City have both moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the reasons that follow, the City's Motion shall be granted, and Araoye's shall be denied.

I.   FACTUAL BACKGROUND

The City hired Plaintiff as an accountant trainee in its Water Revenue Bureau, and then, the following year, promoted him to an accountant position.  On December 18, 2017, he was promoted again to be an accounting supervisor in the Refund Unit of the City Revenue Department but the job was subject to a six-month probationary period, which was set to end June 17, 2018.  During the probationary period, he received two performance evaluations, the first of which graded most of his performance factors as "Superior" with a few being marked as "Satisfactory," while the second evaluation graded most of his performance factors as "Unacceptable."

Following his poor second evaluation, at his six-month probationary meeting, he was issued a rejection notice from the accounting supervisor position.  The notice described a number

1

of issues related to his work performance, including missing refund petitions, a disorganized workstation, improper delegation of work to subordinates, failure to follow priorities, and working unauthorized overtime hours. The City restored him to his former accountant position. Roughly a year later he resigned. Araoye claims he was discriminated against on the basis of his race in violation of 42 U.S.C. § 1981 by fellow employees and supervisors during and soon after his probationary period.

## II.     SUMMARY JUDGMENT STANDARDS AND RULES

A party is entitled to summary judgment if it shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Inferences to be drawn from the underlying facts contained in the evidential sources must be viewed in the light most favorable to the party opposing the motion." *Peters Twp. Sch. Dist. v. Hartford Acc. & Indem. Co.*, 833 F.2d 32, 34 (3d Cir. 1987).

"A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson*, 477 U.S. at 248-52). "The non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Id.* (citation omitted). The standard does not change when, as here, the parties have filed cross-motions for summary judgment:

"[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (citation omitted). A moving party is entitled to judgment as a matter of law where the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323.

Before and since moving for summary judgment, Araoye has failed to follow procedures set out in Rule 56, the Scheduling Order in this case, and this Judge's Policies and Procedures. Federal Rule of Civil Procedure 56 requires that a party "asserting that a fact cannot be or is genuinely disputed must support the assertion by" "citing to particular parts of materials in the record" and provides that, if a party fails to do so, the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(c), (e). The Scheduling Order in this case provides that motions for summary judgment shall be supported with affidavits, depositions, documents, or other evidence, as permitted by Rule 56, and that references to such evidence "must include specific citations to exhibit, page, and line number." Section V of this Judge's Policies and Procedures keys off of the requirements of Rule 56 in describing the process that a party must follow in briefing a summary judgment motion. The parties must first meet and confer to develop a single joint appendix of all exhibits, which appendix the moving party must file with its brief. The moving party must also provide along with its summary judgment brief a statement of undisputed material facts with pinpoint cites to the joint record. In response, the opposing party admits or denies each stated fact and provides its own statement of disputed material facts to which the moving party responds. Each statement of fact must include pinpoint cites to the record in support of such fact. In addition, this Judge's Policies and Procedures note that

3

material not included in the summary judgment joint appendix will not be considered.

In his briefing on summary judgment, Araoye often fails to cite to particular parts of materials in the record and did not develop a list of undisputed facts supported by the record. Further, Araoye often cites to materials submitted as miscellaneous, free-floating exhibits elsewhere in the docket, and often fails to provide pinpoint citations.

The Court is not required to scour the record to support Araoye's assertions where he has failed to cite to specific record evidence. *See Dawson v. Cook*, 238 F. Supp.3d 712, 717 (E.D. Pa. 2017); *Taraboshi v. Holder*, 337 F. App'x 101, 103 (2d Cir. 2009); *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007). But because Araoye is a *pro se* litigant, his pleadings may be liberally construed. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003). In light of his *pro se* status, the Court will consider other material in the record to understand the nature of Araoye's claims and determine whether there are genuine disputes regarding material facts. *See, e.g.*, *Harp v. Rahme*, 984 F. Supp. 2d 398, 409 (E.D. Pa. 2013), *aff'd*, No. 13-4808 (3d Cir. Aug. 13, 2014) ("[T]o deny any consideration to Plaintiff's submissions due to deficiencies in formatting would conflict with the policy of construing liberally the submissions of pro se parties.").

It should be noted, however, that a party cannot rely on "conclusory, self-serving" affidavits to ward off summary judgment. *Gonzalez v. Sec'y of Dept. of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009)). And "unsupported assertions, conclusory allegations, or mere suspicions" are insufficient to defeat summary judgment. *Argonaut Great Cent. Ins. Co. v. Phil's Tavern, Inc.*, 2001 WL 1346327, at *5 (E.D. Pa. Oct. 29, 2001).

### III.  RULE 56(F) BRIEFING

In their initial briefing on their summary judgment motions, the parties addressed the

substantive issue of racial discrimination under Section 1981. They did not, however, address the issue of whether Section 1981 provided a valid cause of action and, if not, whether Araoye could succeed instead under the cause of action provided by Section 1983. Given the *pro se* status of the plaintiff, the Court deemed it useful to ask the parties to address those issues. To wit, pursuant to Federal Rule of Civil Procedure 56(f), which allows a court to grant a summary judgment motion on grounds not raised by a party after giving "notice and a reasonable time to respond," the Court requested supplementary briefing on whether Araoye lacks a valid cause of action under 42 U.S.C. § 1981 and whether his claim, assuming it could be treated as being brought pursuant to 42 U.S.C. § 1983, is sufficient to overcome *Monell*'s limits on municipal liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Both parties filed timely supplemental briefs. Accordingly, the questions to be decided are (1) whether Araoye has a valid cause of action under Section 1981; (2) whether Araoye can rely on the private cause of action under Section 1983 despite not having pled pursuant to that section; and (3) if he can rely on Section 1983, whether he can overcome the limits of municipal liability for Section 1983 claims as established by the United States Supreme Court in *Monell*. 436 U.S. 658.

## IV.    DISCUSSION

### A.  Lack of Private Cause of Action Under Section 1981

Turning first to Araoye's claim under 42 U.S.C. § 1981, it is easily disposed of in that the Third Circuit, following the United States Supreme Court, has held that Section 1981 does not provide an implied private cause of action against state governmental units. *McGovern v. City of Philadelphia*, 554 F.3d 114 (3d Cir. 2009) (holding that Section 1981 does not provide a private cause of action for discrimination lawsuits against state governmental units like the City of Philadelphia); *see Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989). Instead, 42 U.S.C. §

1983 "constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *McGovern*, 554 F.3d at 121 (quoting *Jett*, 491 U.S. at 733).

Araoye does not plead his Section 1981 claim pursuant to Section 1983. Since the only defendant in his amended complaint is the City of Philadelphia, which is a state governmental unit, Araoye's Section 1981 claim must fail and summary judgment will be granted on his Section 1981 claim shorn of its Section 1983 support. *See Arendale v. City of Memphis*, 519 F.3d 587, 607 (6th Cir. 2008) (affirming district court decision granting summary judgment to municipality where Section 1981 claim failed as a matter of law for lacking a cause of action); *Butts v. Cnty. of Volusia*, 222 F.3d 891, 895 (11th Cir. 2000) (affirming district court's grant of summary judgment where plaintiff asserted Section 1981 claim against state actor without pleading Section 1983); *De v. City of Chicago*, 912 F. Supp. 2d 709, 730 (N.D. Ill. 2012) (granting summary judgment to municipality where plaintiff brought discrimination claim pursuant only to Section 1981).

Nevertheless, while *pro se* litigants must still "abide by the same rules" that apply to others, *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013), it is permissible to treat a *pro se* litigant's Section 1981 claims that would otherwise fail for lack of a cause of action as if they were brought pursuant to Section 1983. *See, e.g.*, *Blackmon v. Escambia Cnty. Sch. Bd.*, 2014 WL 51342, at *4 n.8 (N.D. Fla. Jan. 7, 2014), *aff'd*, 568 F. App'x 848 (11th Cir. 2014); *Carter v. Muldoon*, 2018 WL 2049841, at *2 n.3 (D. Neb. May 1, 2018).[1]

Yet even if Araoye's Section 1981 claim is treated as if it were brought pursuant to

---

[1] The Court also notes that Plaintiff, in his motion for leave to file a second amended complaint submitted after summary judgment motions had been filed, cited to case law noting that Section 1981 claims by *pro se* plaintiffs may be liberally construed as having been brought under Section 1983. While that motion was denied, Plaintiff thus apparently attempted to correct this shortcoming, although doing so after summary judgment motions were filed by both parties.

Section 1983, here, where the defendant is a municipal entity, it runs into a separate problem. As discussed below, Araoye fails to demonstrate his alleged statutory injuries were caused by an official policy or custom of the City as required under *Monell*.

### B. *Monell* Liability

Municipalities, like the City of Philadelphia, cannot be held vicariously liable for the federal constitutional or statutory violations of their employees. *Monell*, 436 U.S. 658; *see McGovern*, 554 F.3d at 121. Instead, municipal liability under Section 1983 must be predicated on actions taken pursuant to official policies or customs of the municipal entity. *See McGovern*, 554 F.3d at 121. Although *Monell* involved Section 1983, the Supreme Court has extended *Monell* to apply to cases arising under Section 1981. *Jett*, 491 U.S. at 735-36; *McGovern*, 554 F.3d at 121. *Monell* imposes "rigorous standards of culpability and causation" for municipal liability. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 405 (1997).

To satisfy *Monell*, Araoye must demonstrate that any violation of Section 1981 was caused by a municipal policy or custom. *Monell*, 436 U.S. at 694. To meet the policy-or-custom requirement, Araoye must show that the City "implement[ed] or execute[d] a policy statement, ordinance, regulation, or decision officially adopted and promulgated," or acted "pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *McGovern*, 554 F.3d at 121 (quoting *Monell*, 436 U.S. at 690-91). "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000) (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)). Customs can be shown where "practices of state officials . . . [are] so permanent and well settled as to virtually constitute law." *Id.* (internal quotation omitted).

7

The plaintiff must present evidence that an official with "final policy making authority" "authorized or acquiesced" in the policy or custom. *Oaks v. City of Philadelphia*, 59 F. App'x 502, 504 (3d Cir. 2003).

It is also necessary to show that the policy or custom caused the alleged injury. The plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Berg*, 219 F.3d at 276 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 404). If the policy or custom does not facially violate federal law, causation must be shown by "demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." *Id.* (citation omitted).

### i. Allegations Involving Individual Actions Without a Policy or Custom

Most of Araoye's allegations focuses on the allegedly discriminatory actions of individual employees and supervisors, including alterations to his probationary paperwork by his supervisor Noreen Skirkie and by his human resources manager Glenn Harper; his lack of training during his probationary employment period under Stephanie Gaines's supervision; the creation of a hostile work environment by Gaines and Skirkie; and retaliation by multiple employees (in the form of his adverse performance evaluation, rejection, and subsequent denial from promotion) for his raising complaints about discriminatory behavior. As to these claims, Araoye fails to provide evidence that any municipal policy or custom was the "moving force" behind the alleged injuries rather than actions of individual employees. *See Berg*, 219 F.3d at 275-76.

### ii. Civil Service Regulations and Regulation 14.042

While Araoye argues that the alterations to his performance report and rejection notice

violate aspects of the Philadelphia Civil Service Regulations, he does not demonstrate that the relevant Civil Service Regulations themselves are the cause of the alleged harms (*i.e.*, such that they might qualify as a policy under *Monell*). Quite the opposite, Araoye generally relies on the Civil Service Regulations to attempt to vindicate the rights he claims under them.

The only potential exception is his theory, as laid out in his Supplemental Brief, that Civil Service Regulation 14.042 is the cause of his alleged injuries because it removes the right for employees to seek redress for wrongful rejection from a position after a probationary period. But this argument fails to satisfy the demands of *Monell* as well.

Philadelphia Civil Service Regulation 14 sets forth regulations for the probationary period of employment, and Subsection 14.042 states: "An employee who is rejected during the probationary period does not have the right to appeal to the Civil Service Commission against such action."[2] Araoye argues that Section 14.042 prevents employees like himself from seeking redress of wrongs committed against them during their period of probationary employment and actually "encourages intentional racial discrimination" on that basis.

But Araoye cannot show, as he must under *Monell*, that Civil Service Regulation 14.042 is the cause of his alleged statutory injuries under 42 U.S.C. § 1981. The fact that the regulation prevents him from appealing his probationary rejection to the Civil Service Commission is not the cause of the racial discrimination he claims he experienced in violation of Section 1981. The lack of one form of redress related to his probationary denial is not the cause of his alleged injuries.

---

[2] Philadelphia Civil Service Regulations can be accessed at the following web address: https://www.phila.gov/publications/civil-service-regulations/#/ (last updated February 18, 2022).

### iii. *Failure to Train*

Araoye claims he suffered from a lack of training while operating under a demanding workload, stating that Gaines, the employee designated to train him, did not adequately do so. While failure to train can be the basis of *Monell* liability when a municipality's failure to train reflects "deliberate indifference" to its citizens' rights, *City of Canton v. Harris*, 489 U.S. 378, 392 (1989), Araoye does not argue that the City failed to adequately train the employees he accuses of discriminatory behavior (*e.g.*, by failing to conduct anti-discrimination training), let alone that such a failure to train other employees evinces "deliberate indifference" on the City's part. Nor has Araoye "identified the specific training" the City "should have offered which would have prevented the deprivation" of his statutory rights under Section 1981 nor "established that such training was not provided." *Watson v. Philadelphia Hous. Auth.*, 629 F. Supp. 2d 481, 487-88 (E.D. Pa. 2009) (citation omitted).

The only potential exception is his argument that the City did not adequately train its employees as to the Civil Service Regulations he argues were violated during his probationary period. But Araoye has not shown that any lack of training as to the Civil Service Regulations governing administrative aspects of the probationary period caused an injury cognizable under Section 1981. In other words, Araoye does not demonstrate that the alleged racial discrimination was caused by gaps in any other employee's knowledge of the Civil Service Regulations.

### iv. *Failure to Prevent & Acquiescence by Officials*

Araoye also argues that the City failed to prevent racial discrimination against him by his coworkers and supervisors through the inaction or acquiescence of City officials. For instance, Araoye argues that Tom Wismer, a director in the Refund Unit, was aware of the allegedly discriminatory actions against him and did nothing to prevent them. Araoye's Supplemental

Brief expounds on this topic and lists other individuals such as Revenue Commissioner Frank Breslin, Office of Human Resources Director Pedro Rodriguez, and Human Resources Director Jessica Varela.[3]  For instance, as for Breslin, Araoye claims, without citing to supporting record evidence, that he met Breslin, worked with Breslin's office on Refund Unit tasks, that Breslin sent a memo to him regarding a certain project, and Breslin sent him and others a "thank you" note after a project was completed.  On these grounds, Araoye claims that Breslin was "aware of [the] timeline of [his] probationary period" but "failed to ask questions" about the rejection notice and its alleged inaccuracies when it was brought to Breslin for a signature.  Araoye claims that Rodriguez was aware and acquiescent on the basis that he signed Araoye's rejection notice and that Varela did not address the alleged wrongdoing after being informed by a union president.

But Araoye still fails to identify a policy or custom to which any failure to prevent would be attributable and, in any case, does not demonstrate deliberate indifference on the City's part. *Berg*, 219 F.3d at 275.  In fact, Araoye provides evidence that the City investigated his complaints against employees Skirkie, Wismer, and Gaines in the form of an investigative report from the City's Office of Labor Relations.

Furthermore, Araoye does not show that any official with final policymaking authority created a policy or acquiesced in a custom that caused his alleged injuries.  For instance, Araoye fails to provide evidence by which a reasonable juror could conclude that Breslin, who appears to be the highest ranking official Araoye identifies, was aware of the alleged discrimination or acquiesced in any custom that caused Araoye's alleged injuries under Section 1981.  Araoye fails to make any such showing for the other identified officials as well.

---

[3] Job titles are drawn from Araoye's submissions where absent from the undisputed facts.

### v. *Pattern of Discrimination*

Finally, Araoye appears to argue, often through statements unsupported by record evidence, that his alleged injuries under Section 1981 are attributable to a broader pattern of discrimination in the Revenue Department. Araoye argues that the City racially segregates between different divisions of the Revenue Department and that white employees enjoy greater promotional opportunities. Generously construed, his Supplemental Brief appears to argue this alleged pattern is sufficient to establish a custom under *Monell*.

Under this theory Araoye still has not identified a custom "so permanent and well settled as to virtually constitute law," *Berg*, 219 F.3d at 275, nor has he demonstrated that an official with "final policy making authority" "authorized or acquiesced" in that custom. *Oaks*, 59 F. App'x at 504. Moreover, Araoye does not show the requisite causation, namely that any broader pattern of discrimination, assuming it amounts to a "custom" under *Monell*, caused his alleged injuries under Section 1981.

Having disposed of the matter on the policy-or-custom requirement of *Monell*, it is unnecessary to determine whether Araoye has made a sufficient case as to the underlying statutory violation—*i.e.*, whether the rights guaranteed to him under 42 U.S.C. § 1981 have been violated. *See, e.g.*, *Jacobs v. City of Philadelphia*, 2004 WL 2850081 (E.D. Pa. Dec. 10, 2004) (granting summary judgment on Section 1981 and Section 1983 claims where plaintiff failed to show defendant City of Philadelphia had a policy or custom).

An appropriate order follows.

**BY THE COURT:**

/s/Wendy Beetlestone, J.

_____
**WENDY BEETLESTONE, J.**